Strafford,  
June 2, 1953.  } No. 4175.

STATE *v.* LLOYD H. SKILLINGS.

*John M. Brant,* county solicitor (by brief and orally), for the State.

*Robert J. Doyle* and *Bolic A. Degasis* (*Mr. Doyle* orally), for the respondent.

DUNCAN, J.   The offense which the respondent is charged with having committed on December 13, 1949, is that of larceny from the home of Sarah A. Rollins of $12,000 belonging to her.   R. L., c. 452, s. 3, as amended by Laws 1949, c. 140, s. 1.

Mrs. Rollins was an aged woman, ninety-one at the time of her death in April, 1950, who suffered a cerebral hemorrhage on November 20, 1949. Thereafter for the most part, she was confined to her bed until her death.   According to the evidence it had been reputed for some time that she kept large sums of money about her home, and in 1948 she was advised to "count her money" and stated that she had $158,000.  There was evidence that she customarily concealed currency in a variety of places in the house: under a rug, under a pillow and the mattress of her bed, in a clock, in a closet and in a kitchen table drawer. At her death only a few hundred dollars cash on hand were found, and slightly less than $20,000 in savings bank deposits.

The respondent conducted a garage business on premises rented from Mrs. Rollins who also had income from other rentals.   The gar-

age business had originally been operated by the respondent's brother, to whom Mrs. Rollins had loaned substantial sums of money. The brother became involved in financial difficulties, and at the time of trial was indebted to Mrs. Rollins for loans of over $40,000. In August, 1949, the respondent took over the business, which was incorporated in October, 1949. He had no franchise as an automobile dealer, and found it difficult to meet operating expenses from such income as was derived from gasoline sales and automobile repair. He succeeded in obtaining the agency for Mercury and Lincoln cars, upon a limited basis in December, 1949. By August, 1950, however he was unable to meet requirements imposed by the bank in order to retain the agency, and the business was closed by action of his creditors at that time.

In July, 1949, Mrs. Rollins cashed some government bonds, receiving a total of $28,525, consisting in part of twenty-eight $1,000 bills. On August 12, she loaned the respondent $4,000 and on October 22, 1949, when the garage business was incorporated, an additional $4,000. Both loans were made in cash. The second loan was deposited by the respondent in a Somersworth bank. He testified that the currency representing the first loan was kept by him in a bureau drawer at his home. At one time he testified that this loan consisted of four $1,000 bills, and at other times that it was partly small bills, but included at least one $1,000 bill. It could be found that Mrs. Rollins refused him an additional loan after October 22 and he testified that in November, 1949, he borrowed $1,250 from another individual in Somersworth. This loan was repaid by a check for $1,300 on January 28, 1950.

There was evidence that during October, November, and early December, the financial condition of the respondent's business was "very, very poor." At times it was necessary for him to borrow from his bookkeeper in order to meet the payroll. On or about December 13, arrangements were completed to obtain the Lincoln-Mercury franchise, and there was evidence that on that occasion the respondent exhibited to the treasurer of his organization an envelope containing a large number of bills which he stated amounted to $15,000. The currency was tied in individual bundles with string and thread, and had an old and musty odor. The respondent however testified that he had between eight and nine thousand dollars to show to the company representative on that occasion.

On December 15, 1949, the respondent purchased a Mercury automobile at Haverhill, Massachusetts for $1,913.19, and on Decem-

ber 22, a Lincoln for $2,800. Both purchases were made with small bills which were described as "old," "musty," "sticky" and "dirty," and having the appearance of having been "in storage some place." There was also evidence that the respondent appeared to be well supplied with funds after the second week in December. Christmas bonuses were given to employees and the respondent purchased two elaborate electric trains for his "youngster."

On January 3, 1950, Ada Chaney, a niece of Mrs. Rollins who had come to live with her shortly before Mrs. Rollins suffered the shock, delivered $3,250 of Mrs. Rollins' money to the respondent to be used for the purchase of an automobile. She testified that there were three $1,000 bills in the payment. On the following day, the respondent bought from a Somersworth bank a certified check payable to the Ford Motor Company for $6,933.82, delivering currency consisting of bills of twenty dollars or less in denomination, which the teller testified "smelled very musty as though they had been laying in some place for some time." The respondent testified that this was the currency received from Ada Chaney together with other currency which he had on hand. The money which Mrs. Rollins kept about the house was described as tied in small parcels and having a musty odor.

This evidence, coupled with evidence of statements made by the respondent following Mrs. Rollins' shock, that he would now be in a position to search her house for money, and later that he would never have to do a day's work and was independently rich was sufficient to warrant a finding that he had taken a very substantial sum from Mrs. Rollins' home. From the loans made by Mrs. Rollins aggregating $8,000 the respondent claimed to have retained only $4,000 of the original currency, of which $1,000 could be found to be a single bill. He testified that this currency was drawn upon for the business and replaced from time to time. However by December 22 purchases aggregating $4,700 were made with currency which could be found to have come from Mrs. Rollins, and in early January the certified check was purchased with nearly $7,000 in similar currency. If the testimony of Ada Chaney were believed, no more than $250 of the currency which she furnished could have been used in the latter transactions, and the respondent's testimony that he retained a substantial portion of the original loan did not require belief in view of the evidence of his financial difficulties up to mid-December.

Thus it could be found that in mid-December he possessed $15,000 in bills of small denominations having a musty odor, and that there-

after he negotiated nearly $12,000 identified as having the same characteristics. The jury could find that some or all of this currency came from Mrs. Rollins and that it was acquired in no legitimate way. See *State* v. *Gobin*, 96 N. H. 220, 222. The evidence supporting the indictment was clearly sufficient to present an issue for the jury.

The remaining indictments arise out of evidence concerning the respondent's conduct on December 31, 1949, and the period immediately prior thereto. It would serve no useful purpose to relate the evidence in detail. It was sufficient to warrant a finding that he evolved a scheme which he undertook to consummate on December 31, 1949, by which drugs which he mixed in an ice cream sundae were to be delivered to Ada Chaney at Mrs. Rollins' house by the witness Perry, and the respondent was to search the premises for money, after Ada Chaney was overcome; that although the respondent arrived at the house after Miss Chaney had eaten the ice cream, the plan failed and no search was made, because the witness Perry substituted a harmless sundae for that supplied her by the respondent.

The charges arising out of the evidence tending to establish these facts are contained in four indictments: breaking and entering in the nighttime with intent to steal (R. L., *c.* 453, *s.* 2); felonious entry with intent to steal (R. L., *c.* 453, *s.* 4); "attempt, by assault and violence upon the person of one Ada Chaney . . . to steal, rob and take from [her] person and . . . presence, care, custody and control . . . moneys of one Sarah A. Rollins . . . of the total value of more than fifty dollars" (see R. L., *c.* 455, *s.* 18; R. L., *c.* 459, *s.* 5); and "attempt to make an aggravated assault . . . upon one Ada Chaney . . . by means of drugs . . . capable of rendering [her] unconscious and of inflicting serious physical injury." R. L., *c.* 455, *s.* 23; *c.* 459, *s.* 6.

The indictment for burglary charges that the respondent "in the nighttime . . . the dwelling house of one Sarah A. Rollins . . . feloniously and burglariously did break and enter, with intent . . . to steal, take, and carry away . . . ." This is proper form (R. L., *c.* 453, *s.* 2; Justice & Sheriff (1931) 359) and the motion to quash upon the ground that "the allegations . . . do not constitute the crime of burglary" was properly denied. The only issue as to the sufficiency of the evidence supporting this indictment which requires consideration arises out of evidence that the respondent was accustomed to admit himself at Mrs. Rollins' house, both in the daytime and at night, upon errands for her benefit. Thus it is claimed that his entry was pursuant

to license of the owner and could not be found to be a breaking. This was an issue for the jury. If it found, as it could upon the evidence, that entry was made with the felonious intent to commit larceny, then there was a "breaking and entering" within the meaning of the statute. On the other hand, if the intent to commit larceny did not arise before entry, the crime of burglary would not have been committed. *State v. Moore,* 12 N. H. 42. See *McGuire v. United States,* 273 U. S. 95, 99. See also, *State v. Howard,* 64 S. C. 344; *Young v. Commonwealth,* 126 Ky. 474.

There was evidence that the Rollins house was closed when the respondent arrived there and that it was necessary for him to open the door in order to gain admission. This was sufficient to warrant a finding of burglary if the requisite felonious intent were also found. *State v. Lapoint,* 87 Vt. 115; *State v. Conners,* 95 Ia. 485. The respondent's guilt under the indictment was properly submitted to the jury.

The indictment for feloniously entering with intent to steal likewise presented a question for the jury. The evidence that the door was closed did not require belief. If the defendant entered without breaking, but when he entered intended to steal, his guilt was established. This was a permissible finding upon the evidence. The issue could equally well have been submitted under the indictment for breaking and entering since the greater offense included the lesser. *State v. Moore, supra.*

The indictment charging "attempt, by assault . . . to steal [and] rob" is in proper form. Robbery, both at common law and by statute, is the felonious taking from the person of another, by assault, or by violence and putting in fear. R. L., c. 455, s. 18. An attempt to commit the crime may properly be charged in the language of the statute, which specifies its elements (see *State v. Beckman,* 57 N. H. 174) and such an attempt is a distinct offense. R. L., c. 459, s. 5.

The motion to quash this indictment was upon grounds that the allegations were ambiguous, did not charge a crime, and that the defendant could not prepare his defense thereto. The motion was properly denied. The crime charged is an attempt to commit what the statute specifically defines as robbery. The indictment is not reasonably to be construed as charging an attempt to commit assault with intent to steal, even though other allegations of the indictment indicate that no assault in fact took place. One of the prerequisites of an attempt is the failure to accomplish the attempted crime. The particular acts relied upon as constituting the attempt to rob are

fully set forth and the defendant could not have been mistaken concerning what he was required to defend against.

There was evidence which a jury could find fully supported the charges made. The motions to dismiss and for a directed verdict were therefore properly denied as to this indictment. The intended assault was to be by the administration of drugs in ice cream. It could be found that the drugs employed were calculated, if consumed, to overcome the person for whom they were intended, and that the respondent was prepared thereupon to steal money which he expected to find in her immediate presence. See *Commonwealth* v. *Stratton*, 114 Mass. 303; *Carr* v. *State*, 135 Ind. 1, 3. This was attempted robbery. The respondent's overt acts could be found to have gone beyond the stage of mere preparation to the point where only the intervention of extraneous circumstances prevented the crime, namely, the action of the witness Perry in substituting harmless ice cream for the drugged sundae given her by the respondent. *People* v. *Werner*, 16 Cal. (2d) 216, 221, 222. See *State* v. *Dumas*, 118 Minn. 77; *People* v. *Moran*, 123 N. Y. 254. He was present in the house, prepared to rob had the drugs in fact been administered with the expected result.

It could properly be found that what was intended was a taking from the presence of Ada Chaney (*State* v. *Deso*, 110 Vt. 1, 6; *People* v. *Covelesky*, 217 Mich. 90, 96) and that the money which it was proposed to take although belonging to Mrs. Rollins was in the former's custody. See *State* v. *Gorham*, 55 N. H. 152. Mrs. Rollins was incapacitated by her illness. The money was thought to be kept in locations which were in her niece's presence. Her niece was there for the purpose of protecting the house, as the necessity that she be drugged indicated. "There would be no occasion to resort to the use of violence directed to a person who is not in possession . . . ." *Barfield* v. *State*, 137 Tex. Cr. Rep. 256, 261; anno. 123 A. L. R. 1099. The evidence was sufficient to go to the jury.

The final indictment presented for consideration is one charging that the respondent "did attempt to make an aggravated assault . . . upon one Ada Chaney . . . by means of drugs . . . capable of rendering [her] unconscious and of inflicting serious physical injury . . . with the intent . . . to enter [and] steal." The respondent's motion to quash this indictment was based upon the same grounds stated in the motion to quash the indictment for attempted robbery, with the additional ground that the "facts as set forth do

not constitute aggravated assault." The argument is made that because an assault may of itself consist of no more than an attempt to commit a battery, an attempted assault is no more than an attempted attempt and not a crime.

It is true that the offense charged is not an aggravated assault, but had it been consummated according to the alleged plan an aggravated assault would have been committed. Under the statute (R. L., c. 455, s. 23) an assault or battery "of an aggravated nature" is a felony. An assault where the means used to accomplish the injury are highly dangerous, or where the accused has a motive beyond the desire to injure the person assaulted, is an assault of an aggravated nature. See 4 Am. Jur. 142. The offense alleged by the indictment to have been attempted was an offense coming within this description, and what was alleged was not merely an "attempt to attempt" to commit a battery (i.e., an attempted assault) but an attempt to commit a battery of an aggravated nature. R. L., c. 459, s. 6, provides: "If any person shall attempt the commission of any offense for which the maximum punishment is imprisonment for a term less than twenty years he shall be liable to a punishment . . . ." etc. The indictment sufficiently alleged an attempt within the meaning of the statute.

The motions to dismiss and for a directed verdict were properly denied so far as they related to this indictment also. The evidence warranted a finding that the respondent had in his possession a sufficient quantity of barbituric acid derivatives to permit the administration of a lethal dose. There was evidence that when he displayed the liquid mixture which he proposed to disguise in ice cream, he announced that it was "strong enough to kill three people." There was also evidence that he delayed his attempt until December 31, in order that Mrs. Rollins' attending physician might be available in case of serious consequences to Miss Chaney. The overt acts of the respondent, as was the case with the evidence supporting the indictment for attempted robbery, could be found to have gone beyond mere preparation, to closely approximate the commission of the intended offense.

We conclude that the respondent's exceptions are without merit, and they are accordingly overruled.

*Exceptions overruled.*

Goodnow, J., did not sit: the others concurred.