### State of Vermont v. Bernard Gordon Blakeney

[408 A.2d 636]

No. 239-78

Present: Barney, C.J., Larrow, Billings and Hill, JJ., and Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed October 2, 1979

Motion for Reargument Denied October 31, 1979

*Gregory W. McNaughton,* Washington County State's Attorney, and *Philip H. White,* Deputy State's Attorney, Montpelier, for Plaintiff.

*James L. Morse,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, and *Nancy Kaufman,* Public Defender, Barre, for Defendant.

Hill, J. The defendant appeals from a conviction of aggravated assault. He alleges error as follows: first, that the State failed to prove essential elements of the charge; second, that the trial court erred in admitting irrelevant evidence; third, that the trial court erred in failing to grant defendant's requested jury instruction; and fourth, that a mistrial should have been granted due to a breach of the trial court's sequestration order.

On April 18, 1978, the defendant, his brother and another young man were making the rounds of the Barre night spots. About 11:00 p.m. they met the alleged victim of the assault. She too had been visiting the Barre night spots and was on her way home. She knew the brother of the defendant but was unacquainted with the defendant. After joining the group and visiting additional night spots they arrived at the Blakeney residence. There she went to bed with the brother. Upon awakening in the morning she found the brother gone and went back to sleep. Awakening later she found the defendant in bed with her. She got up, got dressed and went downstairs to the living room. The defendant followed her. After some talk, he asked her to go to bed with him, an offer she refused.

At this point the factual accounts of the defendant and prosecutrix diverge. According to the prosecutrix, the defendant pushed her into a downstairs bedroom. There he threw her against the wall, hit her in the eye and on the side of her head and body, and pulled her hair. She attempted to escape his attack by crawling under the bed. The defendant grabbed her around the neck and choked her for three or

four minutes during which time her breathing was impaired. She was then forcibly pulled from under the bed at which time the defendant threw her on the bed, struck her further and engaged in intercourse with her.

The defendant was charged with both sexual assault and aggravated assault. There was conflicting evidence as to whether the assault occurred before the sex act or after it. The jury found him not guilty of sexual assault but guilty of aggravated assault. We affirm.

## I.

The amended information under which defendant was brought to trial for aggravated assault alleged that he "did . . . knowingly and purposely cause serious bodily injury to another . . ., by striking and choking her, all in violation of 13 V.S.A. § 1024(a) (1)." So far as is pertinent here, 13 V.S.A. § 1024 provides:

> (a) A person is guilty of aggravated assault if he:
> (1) . . . causes [serious bodily] injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

"Serious bodily injury" is, in turn, defined as "bodily injury which creates a substantial risk of death . . . ." 13 V.S.A. § 1021(2).[1]

Defendant argues that the aggravated assault statute punishes the infliction of *injuries* which threaten life (*i.e.,* serious bodily injury), not merely life-threatening *conduct*. He claims that the latter case is covered by the reckless endangerment statute. 13 V.S.A. § 1025. Defendant premises this argument on the claim that strangulation, with its resultant occlusion of the trachea, is injury while in progress but that "the injury [heals] (so to speak) as soon as the force is released." Defendant overlooks, however, that seri-

---

[1] Section 1021(2) also includes within its definition bodily injury "which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." The State limited itself, however, to the charge that there was a "substantial risk of death" and the case was submitted to the jury on that basis.

ous bodily injury, although greater in degree, must first be bodily injury, which is defined as "physical pain, illness or *any* impairment of physical condition." 13 V.S.A. § 1021(1). If we were to accept defendant's argument, we would, in effect, be "amending" the statute to read "permanent impairment" rather than its present "any impairment." We are not so inclined.

Defendant alternatively claims that even if the State showed bodily injury within the meaning of the statute, there was no proof of "substantial risk of death." Again, the gist of defendant's argument apparently is that strangulation for three to four minutes is merely life-threatening conduct and that unless the act of strangulation results in permanent physical damage, *i.e.*, injury which threatens life, the defendant is not guilty of aggravated assault. Not only is defendant's interpretation of the statutory language strained but he would have this Court believe that strangulation is an act without injury not covered by the aggravated assault statute unless something more than occlusion of the trachea for three to four minutes but short of death resulted. The fallacy of defendant's argument is apparent when viewed in light of the medical testimony adduced at trial, which was to the effect that occlusion for five minutes would mean death.

Furthermore, the physician who examined the victim on the day of the alleged assault testified that "[t]here were numerous black and blue marks and red areas around the neck which conformed to a hand pattern, such as if she had been grabbed by the neck by two hands . . . ." Based upon his observations, the physician testified that there was a serious risk to life. Indeed, on cross-examination by the attorney for the defendant, he testified that "there was considerable force applied to produce these injuries. I felt that was a life threatening injury."

██ Whether this evidence established that there was a substantial risk of death was a question of fact for the jury. *State* v. *Fuger*, 170 Mont. 442, 554 P.2d 1338, 1340 (1976); *People* v. *Jackson*, 194 Colo. 93, 570 P.2d 527, 528 (1977); cf. *State* v. *Persuitti*, 133 Vt. 354, 356–57, 339 A.2d 750, 752 (1975) (element of aggravated force in aggravated assault case is a question for the jury). Moreover, with the introduction of contradictory evidence, "it was the exclusive

province of the jury, as the fact-finder, to resolve . . . evidentiary conflicts and decide whom, and what, to believe." *State* v. *Waite*, 377 A.2d 96, 98 (Me. 1977) ; accord, *State* v. *Bishop*, 128 Vt. 221, 228, 260 A.2d 393, 398 (1969) ("jury . . . is the sole judge of the credibility of witnesses and of the weight of their testimony"). Viewing the evidence in the light most favorable to the State, *State* v. *Guppy*, 129 Vt. 591, 285 A.2d 717 (1971), and given the combined effect of the testimony, the jury could have reasonably concluded that the actions of the defendant placed the victim under a substantial risk of death. We are not prepared to say that the trial court erred in denying defendant's motion for acquittal.

■■ The defendant also claims that the State failed to prove the required specific intent to cause serious bodily injury. As we have previously held that the crime of aggravated assault is a specific intent crime, *State* v. *D'Amico*, 136 Vt. 153, 385 A.2d 1082 (1978), it was incumbent that the State show that the defendant acted with the conscious object of causing serious bodily injury or that he acted under circumstances where he was practically certain that his conduct would cause serious bodily injury. W. LaFave & A. Scott, Handbook on Criminal Law § 28 (1972). See also *State* v. *D'Amico, supra.* Cf. *United States* v. *Haldeman*, 559 F.2d 31, 112–17 (D.C. Cir. 1976) (discussion of specific intent in the context of conspiracy and obstruction of justice). The State is aided in carrying this burden by the general rule that the jury may find from all the evidence that a person ordinarily intends the natural and probable consequences of his voluntary acts, knowingly done. *Domina* v. *Pratt*, 111 Vt. 166, 177, 13 A.2d 198, 204 (1940). See also *State* v. *Ruiz*, 171 Conn. 264, 368 A.2d 222, 230 (1976); *State* v. *Littlefield*, 389 A.2d 16, 22 (Me. 1978).

■ In light of the testimony that defendant repeatedly struck the victim, that he strangled her for three to four minutes, that the impairment of the victim's trachea for this amount of time was life-threatening and that there was a gross disparity in size between the victim and defendant,[2]

---

[2] The defendant stands 5'9" and weighs approximately 200 lbs.; the victim stands 5'4" and weighs 105 lbs.

the jury could have reasonably concluded that, under the circumstances, the defendant possessed the requisite state of mind.

## II.

Defendant next asserts that the trial court erred in admitting into evidence the testimony of two witnesses and a picture of the defendant taken shortly after the assault.

During the course of trial the state's attorney asked the victim's mother how she felt about the victim's injuries. Defense counsel objected on relevancy grounds. After a conference at the bench the question was rephrased as follows: "When you saw those injuries, . . . did they upset you?" No objection was raised to this rephrasing either during the bench conference or when asked of the witness. The witness responded, "Very much."

Later in the trial, the state's attorney asked the victim's uncle what his concern was upon seeing the victim after the assault. Defense counsel again objected based on relevancy. The court permitted the question, with defense counsel preserving her objection. The witness answered, "I mean after seeing, you know, the way she was would make you sick to your stomach."

The trial court admitted the picture in question over defendant's properly raised objection. The picture showed defendant approximately twelve hours after he had been arrested and lodged at the Barre lockup. There were noticeable differences in defendant's hair, facial hair and clothing as he appeared in the picture and as he appeared at trial. Defendant claims that the picture was irrelevant to any of the issues of the case.

■■ The test for relevancy generally is whether the evidence "in some degree advances the inquiry, and thus has probative value." C. McCormick, Handbook of the Law of Evidence § 185, at 438 (2d ed. 1972), *cited in State* v. *Dragon*, 130 Vt. 334, 341, 292 A.2d 826, 831 (1972). Before admitting the evidence, however, the trial court must weigh its probative value against its potential improper prejudicial effect. *State* v. *Davis*, 132 Vt. 290, 293, 318 A.2d 664, 665–66 (1974); *State* v. *Beyor*, 129 Vt. 472, 473–74, 292 A.2d 819, 820

(1971). This weighing process is committed to the informed discretion of the trial judge.

This Court is convinced that there was no showing of prejudice and that the trial court did not err in admitting either the testimony or the picture.

■ With respect to the testimony of the victim's mother, we need express no opinion since the rephrased question was not objected to, and, therefore, is not properly before this Court. *State* v. *Kasper*, 137 Vt. 184, 204–05, 404 A.2d 85, 97 (1979).

■ The issue of the uncle's testimony, on the other hand, is properly before this Court and, with regard to that evidence, we find no error in its admission. The uncle's statement was relevant to the seriousness of the victim's injuries, the force necessary to cause them, and to the defendant's claim of self-defense. Furthermore, we find no prejudice to the defendant where the statement was no more than a verbal characterization of a situation which the jury itself had the opportunity to perceive when pictures of the victim taken shortly after the incident were properly admitted into evidence.

■ The question of the admissibility of the photograph does not require a different analysis. As this Court has stated, "[a] photograph . . . is merely a witness' pictured expression of the data observed by him . . . and its admission, when properly verified, rests on the relevancy of the fact pictured." *Beattie* v. *Traynor*, 114 Vt. 495, 501, 49 A.2d 200, 204 (1946). In the present case, the picture at issue was relevant to defendant's claim of self-defense.

It is our law that a person who is threatened by harm is justified in using reasonable force to repel the aggressor. *State* v. *Doherty*, 72 Vt. 381, 396–97, 48 A. 658, 663 (1900), *appeal dismissed*, 189 U.S. 514 (1903). In determining whether reasonable force was used, we see no error on the trial court's part in allowing a jury to view the injuries, or lack thereof, sustained by one claiming self-defense as compared to those sustained by the alleged aggressor.

## III.

Defendant seemingly raises two issues with respect to the State's closing argument. First, he claims that the trial court erred in not giving his requested instruction to the jury. Second, he claims that, even if the instruction was given, the State's argument was so inflammatory and prejudicial that he was denied a fair trial. We disagree.

It is the settled law of this state that "counsel should confine argument to the evidence of the case and inferences properly drawn from it, and must avoid appealing to the prejudice of the jury." *State* v. *Lapham*, 135 Vt. 393, 406, 377 A.2d 249, 257 (1977). Nor should counsel play on the jury's sympathy or seek to inflame their passions. *Id.* at 407, 377 A.2d at 257. In the proper case, such conduct requires reversal. *Id.* See also *Woodmansee* v. *Stoneman*, 133 Vt. 449, 344 A.2d 26 (1975); *State* v. *Kelly*, 131 Vt. 358, 306 A.2d 89 (1973).

Upon our reading of the record, we find that the circumstances of the present case, although at times approaching the limits of propriety, were not sufficiently prejudicial to grant a new trial. It is the general rule that counsel may recount and comment on evidence properly admitted at trial, that he may draw legitimate inferences from the record, and that he may reflect unfavorably on the defendant so long as the remarks are based on properly admitted evidence. Annot., *Propriety and Prejudicial Effect of Prosecutor's Remarks as to Victim's Age, Family Circumstances, or the Like*, 50 A.L.R.3d 8 (1973).

The State's comments regarding the picture and oral testimony were based on evidence which, as we held above, was properly admitted. Moreover, we find it difficult to ascertain the existence of prejudice when the information provided by counsel's remarks was already properly within the knowledge of the jury.

With respect to the state's attorney's misstatement of fact,[3] an objection was immediately interposed

---

[3] The state's attorney stated that defense counsel had called the victim "a harlot, a vicious prostitute."

by defense counsel, and the court specifically instructed the jury to strike the remark. We find no prejudice.

At the close of trial, defendant requested that the court give the following instruction: "Ladies and Gentlemen, sympathy must play no part in your deliberations in this case. You must decide the case on the facts, using your common sense." The trial court did not give the requested charge. However, the court did charge the jury as follows:

> The case, ladies and gentlemen, must be decided by the evidence alone. There are factors that should play no part in your deliberations. By that I mean you are not to be influenced by suspicion, conjecture, sympathy, or an inference not warranted by facts proven to your satisfaction. . . . In reaching your decision, you should turn your common sense onto all the evidence you have heard, all the probabilities, all the inferences to be drawn from it, and decide the case.

Defendant claims error in the trial court's decision not to grant his requested charge. This Court sees no functional difference between the two charges and, accordingly, finds no error. See State v. Bishop, supra, 128 Vt. at 230, 260 A.2d at 399 (charge "breathes the true spirit and doctrine of the law, and there is no fair ground to say that the jury [was] misled by it"); State v. Morse, 127 Vt. 137, 141, 241 A.2d 328, 331 (1968) (not necessary for court to use precise language requested by defendant as long as essential elements are charged).

Although we find no prejudice to the defendant, we in no sense retreat from this Court's admonishment in State v. Lapham, supra, 135 Vt. at 406, 377 A.2d at 257.

> We believe that a prosecutor has a duty to present the State's case with earnestness and vigor, using every legitimate means to secure a just conviction, however, there is also a corresponding duty to refrain from improper methods calculated to produce a wrongful conviction and to guard against conduct unintentionally trespassing the bounds of propriety.

See also *State* v. *Slocum*, 132 Vt. 476, 321 A.2d 51 (1974); *State* v. *Kelly*, *supra;* *State* v. *Parker*, 104 Vt. 494, 162 A. 696 (1932).

## IV.

Finally, defendant argues that the trial court abused its discretion in failing to declare a mistrial after the State allegedly breached the court imposed sequestration order. We disagree. The communication in question neither violated the scope of the court's order nor prejudiced the defendant's case.

The order, which excluded witnesses from the courtroom, and in no way restricted the right of counsel to confer with their clients or witnesses, cf. *Geders* v. *United States*, 425 U.S. 80 (1976), was based on 13 V.S.A. § 6606, which provides:

> On the trial of a person for a criminal offense or on the examination of a person charged therewith before a district court, on the request of the prosecuting attorney or the party accused, the court shall have the witnesses examined separately and apart from each other.

The purpose of such an order generally is threefold. "It exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses; . . . it aids in detecting testimony that is less than candid"; and when applied to a "witness over a recess called before testimony is completed [it serves to prevent] improper attempts to influence the testimony in light of the testimony already given." *Geders, supra,* 425 U.S. at 87.

The aim of the sequestration order in the present case was to prevent communication among *witnesses* and possible tailored testimony. The object of the order was not to segregate the witnesses from counsel who called them, although issuance of such an order does lie within the sound discretion of a trial judge in the appropriate case. *Id.* at 88.

Defendant contends that during a fifteen minute recess from trial the state's attorney spoke with the prosecutrix and that as a result she changed her testimony from the assertion that she could breathe during the attack to

the claim that she could not, thereby supplying the necessary element from which "substantial risk of death" could be inferred by the jury. From this allegedly "connived" change of testimony defendant claims prejudice.

Even if this Court were to assume that there was an initial showing of prejudice, there were methods available to, and taken advantage by, counsel which removed any prejudicial effect that resulted from the witness' changed testimony.

> [O]pposing counsel in the adversary system is not without weapons to cope with "coached" witnesses. [Counsel] may cross-examine a [witness] as to the extent of any "coaching" during a recess, subject, of course, to the control of the court. Skillful cross-examination could develop a record which [counsel] in closing argument might well exploit by raising questions as to the [witness'] credibility, if it developed that . . . counsel had in fact coached the witness as to how to respond . . . .

*Id.* at 89–90. Moreover, counsel has an ethical obligation not to seek improperly to influence a witness' testimony. Code of Professional Responsibility, 12 V.S.A. App. IX, EC 7-26, DR 7-102.

The record before us discloses that the trial court conducted an evidentiary hearing in order to ascertain whether there had been any improper or unethical influence. The court also allowed defense counsel to cross-examine the prosecutrix on the issue of her altered testimony, including her credibility. Defense counsel was free to exploit any adverse inferences which could have been drawn from the prosecutrix's equivocal testimony.

With respect to this last claim of error, we agree with the court's apt comment in *United States* v. *Harris*, 368 F. Supp. 697, 715 (E.D. Pa. 1973), *aff'd*, 498 F.2d 1164 (3d Cir.), *cert. denied*, 419 U.S. 1069 (1974), a case which presents an almost identical situation to the case at bar. In that case the court stated:

> The defendants have obviously confused the principles involved with sequestration and the manner in which

witnesses should be permitted to have contact with other witnesses, and the principles governing the professional obligations of counsel to his witness and the Court, which was the factual situation presented to the Court here.

With regard to counsel's professional obligations, the record discloses no improprieties.

*Judgment affirmed.*