NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 58

No. 24-AP-271

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| Damien Diaz | September Term, 2025 |

Kerry Ann McDonald-Cady, J.

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and A. Alexander Donn, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Corsones, Supr. J., Specially Assigned

¶ 1. **WAPLES, J.** Defendant Damien Diaz appeals his conviction for assault and robbery. He argues that the court erred in denying his motion for judgment of acquittal because the State produced insufficient evidence to support the jury's verdict, and the verdict was inconsistent with his acquittal of other charges. We affirm.

¶ 2. In January 2024, defendant was charged with aggravated assault with a deadly weapon, grand larceny, unlawful mischief, carrying a dangerous or deadly weapon while committing a felony, and assault and robbery. The State subsequently amended the information to add a charge of larceny from the person. The State presented the following evidence at trial.

¶ 3.     In December 2023, fifteen-year-old complainant and his female friend J.M. spent the night at their friend A.B.'s house in Bennington.  As complainant was leaving the following morning, he placed his belongings—namely his clothes, Xbox, laptop, house key, and associated accessories—in his backpack.  Carrying both his backpack and a speaker, he then walked outside to J.M.'s car.  At the time, J.M. was defendant's girlfriend.

¶ 4.     As complainant walked to J.M.'s car, he saw defendant "running at [him] at a full sprint, holding something in his hand."  Defendant was about two car lengths away, and "it looked like he was holding a knife" because complainant saw "something black tucked . . . up in his sleeve . . . sticking out."  Complainant did not know who defendant was or that J.M. was defendant's girlfriend.  Complainant also did not believe anyone else was outside with him and defendant.

¶ 5.     Feeling "threatened and intimidated," complainant turned around and ran back inside A.B.'s house.  As he ran, he dropped his speaker and backpack on A.B.'s lawn to "make it inside faster."  From the downstairs window in A.B.'s house, complainant watched defendant "smash" his laptop and Xbox in the street by picking them up, throwing them on the ground, and stomping on them.  This went on for ten to fifteen minutes.

¶ 6.     Defendant then picked up complainant's backpack, Xbox, and clothes and walked away.  He left complainant's laptop in the street.

¶ 7.     After the State presented its evidence, defendant moved for judgment of acquittal on all charges but the unlawful-mischief charge.

¶ 8.     Relevant to the assault-and-robbery charge, defendant argued that the State failed to introduce sufficient evidence to prove that defendant possessed a knife, intended to place complainant in fear of imminent serious bodily injury, or took property from the presence of complainant.  The trial court granted the motion to dismiss the grand-larceny charge because the

State had not presented sufficient evidence that the value of the items defendant took exceeded $900 but denied the motion to acquit defendant of the remaining charges.

¶ 9. The jury found defendant not guilty of aggravated assault with a deadly weapon and carrying a dangerous or deadly weapon while committing a felony. It found defendant guilty of unlawful mischief, larceny from the person, and assault and robbery.

¶ 10. Defendant subsequently moved to vacate his conviction for assault and robbery, in part on the ground that it was inconsistent with the jury's acquittal on the two deadly weapon charges. The court denied the motion, concluding that the jury was not required to find that defendant had a knife to find him guilty of assault and robbery, and therefore, the jury's verdict was not inconsistent.

¶ 11. On appeal, defendant challenges the trial court's denial of his motion for judgment of acquittal. He argues that the State did not put forth sufficient evidence to convict him of assault and robbery. He further argues that the court erred in concluding that his conviction of assault and robbery was not inconsistent with the jury's acquittals on the deadly weapon charges. We consider each of his arguments in turn.

I. Judgment of Acquittal

¶ 12. "We review the denial of a motion for judgment of acquittal de novo, using the same standard as the trial court." State v. McMahon, 2024 VT 67, ¶ 7, __ Vt. __, 329 A.3d 173. We must determine "whether the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Perez, 2006 VT 53, ¶ 19, 180 Vt. 388, 912 A.2d 944 (quotation omitted). "[C]ourts should grant a judgment of acquittal only when there is no evidence to support a guilty verdict." State v. Davis, 2018 VT 33, ¶ 14, 207 Vt. 346, 186 A.3d 1088 (quotation omitted). "We examine both the strength and the quality of the evidence; evidence that gives rise to mere suspicion of guilt" is insufficient. State v. Hale, 2021

3

VT 18, ¶ 8, 214 Vt. 296, 256 A.3d 595 (quotation omitted).  However, we "are not triers of fact, and we will not substitute our judgment for that of the jury."  Id. (quotation omitted).

¶ 13.   Defendant first argues that the trial court's jury instructions required the State to prove that defendant possessed a knife to establish physical menace, and that because the State did not sufficiently prove the existence of a knife, the State failed to prove this element of the assault-and-robbery charge.  In his motion for judgment of acquittal, defendant argued that there was insufficient evidence to prove physical menace because showing that defendant ran toward complainant, without verbal threats or more, was not enough to establish an attempt to inflict physical injury.  He did not argue that the State was required to prove he had a knife to substantiate the physical-menace element and therefore failed to preserve this argument for our review.  See State v. Gurung, 2025 VT 52, ¶ 8, __ Vt. __, __ A.3d __ (clarifying that "by failing to raise the issue below," a party "forfeits a claim," and we may review for plain error).  Defendant argues, however, that the court's failure to acquit him on this basis was plain error.

¶ 14.   For an error to rise to the level of plain error, "(1) there must be an error; (2) the error must be obvious; (3) the error must affect substantial rights and result in prejudice to the defendant; and (4) we must correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings."  State v. Herrick, 2011 VT 94, ¶ 18, 190 Vt. 292, 30 A.3d 1285.

¶ 15.   Defendant was charged with assault and robbery under 13 V.S.A. § 608(a), which provides that "[a] person who assaults another and robs, steals, or takes from his or her person or in his or her presence money or other property that may be the subject of larceny shall be imprisoned for not more than 10 years."  On its face, the offense does not require proof that defendant possessed a dangerous weapon.  Id.; see also State v. Bockus, 2024 VT 4, ¶ 27, 218 Vt. 616, 312 A.3d 533 (holding State did not need to prove defendant was "actually armed" with gun while robbing service station to be convicted of assault and robbery).  However, in addition to the

4

governing statute, we must examine "how the court instructed the jury on the elements of the offense." State v. Albarelli, 2011 VT 24, ¶ 8, 189 Vt. 293, 19 A.3d 130.

¶ 16. The trial court instructed the jury that, to find defendant guilty of this charge, the State had to prove (1) defendant; (2) attempted to put complainant in fear of imminent serious bodily injury; (3) by using physical menace; and (4) defendant took money or other property which may be the subject of larceny; (5) with the intent to deprive complainant of the money or property permanently. In explaining the physical-menace element, the court provided both the element itself and the State's theory:

> The third essential element is that [defendant] made his attempt by using physical menace. Physical menace means a threat by word or act to inflict physical injury upon another person. Here, the State alleges that [defendant] attempted, by physical menace, to place [complainant] in fear of imminent serious bodily injury by running towards him with a knife.

¶ 17. After instructing on all elements of the assault-and-robbery charge, the court distinguished between elements and acts. The court clarified that, to return a guilty verdict, the State must have "proven all of the essential elements beyond a reasonable doubt," but "the State need not have proven each of these" acts.

¶ 18. Defendant argues that by describing the State's theory, the court required the jury to find that defendant had a knife. We disagree. Viewed in context, the court recounted the State's theory regarding the assault portion of the charge without limiting the evidence the jury could consider. When defining the elements of assault and robbery, not once did the court tell the jury that the knife was an essential element of the crime.[*] The knife thus constituted an act that the State alleged could prove the element of physical menace. The court did not instruct that the

---

[*] We note that, in its closing argument, the State argued to the jury that even if it doubted defendant's possession of a knife, it could still find defendant guilty of assault and robbery based on his threatening behavior. Given this acknowledgment, the State should have objected to the court's description of its theory and asked the court to instruct the jury that it was not required to find defendant was armed to convict him of that charge.

presence of a knife—or any other act—was required to prove this element. To the contrary, the court allowed the jury to discern and decide which acts, if any, proved the element.

¶ 19. Defendant argues these instructions are akin to those in State v. Albarelli, in which we concluded that the evidence was insufficient to support a charge of disorderly conduct. 2011 VT 24, ¶ 25. They are not. In Albarelli, the defendant was convicted of disorderly conduct under 13 V.S.A. § 1026(1) after he caused a commotion by "ranting" at volunteers working a voter registration table on two occasions. Id. ¶¶ 2, 5-6. The State charged in the information that the defendant "had engaged in either violent, tumultuous or threatening behavior without specifying which it relied upon." Id. ¶ 10. Finding no evidence of violent behavior and concluding that charging "tumultuous" behavior would be overbroad in this context, the trial court "limited the definition of the crime" to " 'threatening behavior.' " Id. In doing so, the court narrowed the charge itself, not the State's theory of fact.

¶ 20. In contrast, here, the court's instructions defined the element of physical menace in its fullest sense as "a threat by word or act to inflict physical injury upon another person." The fact that the court provided the State's theory involving the knife neither renders the theory an element nor limits the element to the State's theory. First, the court defined the element solely as "physical menace" twice in the assault-and-robbery instructions. Second, it maintained the distinction between elements and acts. Viewed in their entirety, the instructions indicated the knife was not an essential element the State was required to prove, and the jury could find the element of physical menace through alternative theories of fact. Accordingly, the court did not err in concluding that the State was not required to prove possession of a knife.

¶ 21. Even if this was the State's primary theory, it does not mean that the evidence was insufficient to prove the elements of the offense. While we consider how the State "defined the behavior that constituted the crime," the facts are not limited by how "the evidence is characterized," but rather are "viewed in their entirety." Id. ¶ 18. To sustain a conviction, the

6

State must "prove each element of the crime beyond a reasonable doubt, not each fact or piece of its theory." State v. Caballero, 2022 VT 25, ¶ 25, 216 Vt. 406, 279 A.3d 676.

¶ 22. When viewed in full, and in the light most favorable to the State, the evidence was sufficient for a jury to fairly and reasonably find physical menace. Defendant sprinted at complainant from about two car lengths away, appearing to complainant to be holding a concealed knife, while the two were alone in the street. His behavior intimidated complainant such that complainant abandoned his valuables and ran inside to protect himself from the apparent threat. The jury could reasonably conclude from these facts that defendant acted in a way that constituted a threat to inflict physical injury to complainant. See Bockus, 2024 VT 4, ¶ 27.

¶ 23. Defendant next contends that the State did not sufficiently establish the element of intent. "Intent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence." State v. Cole, 150 Vt. 453, 456, 554 A.2d 253, 255 (1988). The circumstances surrounding a completed physical act can lead a jury to "properly arrive at the conclusion that this act was intentional and not accidental." State v. Murphy, 128 Vt. 288, 293, 262 A.2d 456, 460 (1970). While "[j]uries may draw reasonable inferences from circumstantial evidence," they may not "bridge evidentiary gaps with speculation." State v. Jones, 2019 VT 3, ¶ 13, 209 Vt. 370, 206 A.3d 153 (quotation omitted).

¶ 24. Taking the evidence in the light most favorable to the State and excluding modifying evidence, here, the jury could reasonably conclude that defendant intended to place complainant in fear of imminent serious bodily injury. Defendant not only sprinted toward complainant in such a way that led complainant to believe he was carrying a knife but also followed him when he dropped his belongings and ran away to escape due to fear of harm. After chasing complainant, defendant destroyed his belongings. The jury could infer from defendant's continued pursuit and subsequent destructive act that defendant intended to place complainant in fear of harm. Defendant's argument that he would have displayed a knife if he had one and wanted to

7

instill fear with it is unpersuasive. The evidence was sufficient for a reasonable jury to conclude that defendant intended to instill fear through conveying the impression that he had a weapon up his sleeve while running at complainant. Defendant's challenge to the sufficiency of the evidence to support intent therefore fails.

¶ 25. Defendant also asserts the evidence was insufficient to prove that he took property from the presence of complainant. In instructing the jury on this element, the court explained:

> A thing [is] in the presence of a person, with respect to assault and robbery, if it is so within his or her reach or control that he or she retain the thing in his or her possession, if he or she were not overcome by [defendant's] violence or prevented by fear caused by [defendant].

See State v. Deso, 110 Vt. 1, 6, 1 A.2d 710, 712 (1938) (describing property in one's presence as "within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession").

¶ 26. Defendant argues that because he did not order complainant to hand over the backpack and only took the backpack when complainant was inside A.B.'s house, defendant did not take property from complainant's presence.

¶ 27. We acknowledge that this case presents some facts diverging from a traditional assault-and-robbery pattern. Cf. Deso, 110 Vt. at 5, A.2d at 712 (describing assault and robbery where defendant and his companion stuck empty revolver in store owner's ribs while taking money from cash register). However, in establishing robbery, property may be "in the presence of" a person even if the person is not in the immediate vicinity. For example, in State v. Skillings, 97 A.2d 202 (N.H. 1953), the niece of an ill homeowner came to live with her "for the purpose of protecting the house." Id. at 207. The defendant made a failed attempt to drug the niece and rob the house. Id. at 206-07. Although the homeowner "custom[a]rily concealed currency in a variety of places in the house," the New Hampshire Supreme Court considered these separate locations as "in [the] niece's presence," even though they were not in her immediate physical vicinity. Id. at

8

204, 206-07. Like the present case, the Skillings defendant did not order or verbally threaten the niece—who, if the crime had been completed as contemplated, would not even have been aware of the robbery while it took place—and did not touch property only within her immediate vicinity. Still, the New Hampshire Supreme Court held the defendant committed attempted robbery, intending "a taking from the presence of [the niece]." Id. at 206; see also Commonwealth v. Homer, 127 N.E. 517, 520 (Mass. 1920) (deeming proving property was taken from "the person of the owner" unnecessary where victim's maid delivered jewels to defendant while victim was in bathroom because property "was in [victim's] protection or control, and that by violence or putting in fear, she was compelled to surrender it"); State v. Calhoun, 34 N.W. 194, 195-96 (Iowa 1887) (holding taking from "immediate presence" occurred when homeowner told defendant about property in other rooms due to "fear of personal violence," and defendant took property from those other rooms). These cases show that proving the defendant used violence or fear to compel the owner to surrender property they had custody of may suffice to establish that the defendant took property from the owner's presence.

¶ 28. Here, the State presented evidence that complainant felt compelled to drop his property, which he had been holding, when he saw defendant run toward him appearing to have a knife in his sleeve. After he ran inside out of fear, complainant watched defendant destroy some of his belongings and take the rest. Viewing this evidence in the light most favorable to the State, the jury could reasonably find that complainant had control over his property before surrendering it due to fear and could have retained possession if not for this fear, such that it was in his presence when defendant took it. See Deso, 110 Vt. at 6, 1 A.2d at 712.

¶ 29. Defendant additionally argues the State failed to prove that all elements of the offense were present at the same time, as charged in the jury instructions. Specifically, defendant contends that the evidence did not evince defendant's intent to rob complainant when he first ran

toward him, and that by the time he took complainant's property, the assault had ended. Defendant failed to preserve this argument by raising it below; accordingly, we review for plain error only.

¶ 30. We conclude the court did not err in failing to sua sponte vacate defendant's conviction on this basis. We "presume that the jury followed the court's instructions." State v. McCarthy, 2012 VT 34, ¶ 17, 191 Vt. 498, 48 A.3d 616. As discussed above, the jury may infer intent from the completed course of conduct. See Cole, 150 Vt. at 456, 554 A.2d at 255; Murphy, 128 Vt. at 293, 262 A.2d at 460. Acts that are " 'inextricably intertwined' " may constitute "one continuous offense." State v. Peatman, 2018 VT 28, ¶ 24, 207 Vt. 97, 185 A.3d 1257 (holding violent acts "over a span of six minutes" constituted "one continuous assault"); see also State v. Gilman, 158 Vt. 210, 215, 608 A.2d 660, 664 (1992) (describing burglary and assault resulting in physical beating as "a single, uninterrupted criminal transaction").

¶ 31. While defendant argues the assault and robbery were separate acts, a reasonable jury could conclude that defendant's conduct presented one continuous offense. The evidence showed that within a short period of time, defendant sprinted toward complainant, who believed he was concealing a knife in his sleeve; caused complainant to run away out of fear; and smashed complainant's belongings before taking some of them. The jury could reasonably understand the incident as one offense comprised of intertwined acts. And, the jury could infer from evidence of the completed act that defendant intended to both assault and rob complainant. Accordingly, we see no error, let alone plain error.

II. Inconsistent Verdicts

¶ 32. We therefore turn to defendant's second main argument on appeal, which is that his conviction for assault and robbery was inconsistent with the jury's decision to acquit him of the charges of aggravated assault with a deadly weapon and carrying a dangerous or deadly weapon while committing a felony. Defendant argues that because the assault-and-robbery charge in this

case required finding defendant possessed a knife, if the State did not prove defendant's possession of a knife, then he could not be found guilty of assault and robbery.

¶ 33. Defendant's claim attacks the jury's assessment of the facts. "This Court applies a clearly erroneous standard in reviewing a jury's findings of fact and will reverse only if the evidence is insufficient to support the finding." State v. Wigg, 2005 VT 91, ¶ 35, 179 Vt. 65, 889 A.2d 233. When acquittal on one charge does not "detract from what the evidence fairly indicated" on another charge, the verdicts are not inconsistent. State v. Carpenter, 155 Vt. 59, 64, 580 A.2d 497, 500 (1990).

¶ 34. Defendant argues this case is like State v. Crepeault, where we reversed a conviction for aggravated sexual assault after the jury acquitted on three predicate charges. 167 Vt. 209, 212-13, 704 A.2d 778, 780-81 (1997). We disagree. In Crepeault, the State charged the defendant with four counts of aggravated sexual assault. Id. at 211, 704 A.2d at 780. Three charges stemmed from specific sexual acts, and the fourth charge alleged a general sexual assault. Id. We held that the defendant's conviction on the fourth count was inconsistent with the jury's acquittals on the three other counts because the fourth count was "not submitted to the jury as a separate and independent offense," but rather was predicated on the jury's conviction on at least one of the first three counts. Id. at 212, 704 A.2d at 781. In contrast, here, the assault-and-robbery charge was a different offense with distinct elements from the two deadly weapon charges. Thus, acquittal of those latter charges did not automatically require acquittal of the assault-and-robbery charge.

¶ 35. This case is more like State v. Bockus. In Bockus, the defendant robbed a service station after telling employees he had a gun, showing the handle of a gun concealed in his waistband, and ordering the employees to open the cash drawer. 2024 VT 4, ¶¶ 2, 27. The State charged the defendant with assault and robbery with a deadly weapon and additionally requested the court instruct on assault and robbery. Id. ¶¶ 5, 9. The jury acquitted the defendant of assault

and robbery with a deadly weapon but convicted him of the lesser-included charge of assault and robbery. Id. ¶ 10. We allowed this conviction to stand, holding the State "did not need to prove that defendant was actually armed with a dangerous weapon . . . to prevail on" an assault-and-robbery charge. Id. ¶ 27.

¶ 36. Defendant argues we should not rely on Bockus because that case presented "ample" evidence to convict the defendant of assault and robbery, and the jury instructions explicitly stated that the State did not need to prove the defendant had been armed with a dangerous weapon. This argument fails because, as set forth above, the evidence presented to the jury in the present case was sufficient to sustain defendant's conviction of assault and robbery, and the jury instructions did not require the jury to find that defendant possessed a knife.

¶ 37. Thus, the verdicts were not inconsistent, and the court did not err in denying defendant's motion to vacate on this ground. However, even if the verdicts were inconsistent, this Court permits inconsistent verdicts to stand. "[L]ogical consistency between verdicts is not a requirement of law, and allowing a verdict to stand that is inconsistent with the jury's determination on another count does not violate due process principles." Carpenter, 155 Vt. at 64, 580 A.2d at 500. For these reasons, we decline to disturb the jury's verdict.

Affirmed.

FOR THE COURT:

_____
Associate Justice

12