### State of Vermont v. Dale D. Dubois

[457 A.2d 623]

No. 346-80

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed January 10, 1983

*Mark J. Keller,* Chittenden County State's Attorney, and *Robert Andres,* Law Clerk (On the Brief), Burlington, for Plaintiff-Appellee.

*Philip D. Saxer* and *Arthur P. Anderson,* Burlington, for Defendant-Appellant.

**Hill, J.** Defendant, accused of participating in a multiple party rape of two women, appeals his conviction, after a trial by jury, of two charges of sexual assault in violation of 13 V.S.A. § 3252(1)(A). Defendant challenges his conviction on three separate grounds. We affirm.

Briefly stated, the facts are as follows. Four men, including the defendant, met three women in Burlington. One woman lived in Burlington, the other two lived in Waterbury. After a short period of socializing, the men offered to drive the women to their homes. They first drove one woman close to her home in Burlington. However, while ostensibly driving the other women to their homes in Waterbury, they stopped at a cabin in Williston then occupied by a fifth man. There the women were allegedly raped. Additional facts relating to the issues raised by this appeal are discussed below.

I.

The defendant first claims that a question by the state's attorney while cross-examining a defense witness which implied that the testimony was influenced by payment was improper and prejudicial. At trial, the defendant produced a witness who testified that one of the two complaining witnesses had had previous sexual acts with two of the men (although not this defendant) involved in the alleged multiple party rape. On cross-examination, the deputy state's attorney asked the following questions:

Q. Were you employed by the staff of their attorneys by any stretch of the imagination?

A. Was I employed?

Q. Yes.

A. Was I paid for testifying?

Q. Yes, did their lawyers ever have you in their employment?

Before the last question was answered, an objection was made. The court indicated to the State that unless some kind of employment relationship could be shown, it could not proceed with this line of questioning. The State remained silent and the court immediately gave a cautionary instruction to the jury.

■■ We have held on numerous occasions that when an improper remark has been made, the mischief may be cured by a withdrawal of the question and a subsequent cautionary instruction to the jury. *Duchaine* v. *Ray*, 110 Vt. 313, 321, 6 A.2d 28, 32 (1939); see also *State* v. *Stacy*, 104 Vt. 379, 404, 160 A. 257, 267 (1932) (citing *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 144, 130 A. 758, 783 (1925)). Here, as the question was never answered by the witness and a cautionary instruction was immediately given, we find the mischief cured and no prejudice shown. Thus, the defendant takes nothing from his first claim.

## II.

The defendant next asserts that the admission of a certain pocketbook and its contents into evidence was improper and prejudicial. At the scene of the alleged rapes, a pocketbook of one of the complaining witnesses was found containing, among other things, human feces. The witness had testified that she had fled from her attackers and had been forced to leave her pocketbook behind. It was the State's contention that the pocketbook was evidence of the victim's flight, while its contents was indicative of the type of relationship between the parties. The court, despite its recognition of the prejudicial impact of the pocketbook and its contents, admitted them into evidence on the grounds of relationship and flight.

■■ Our first question asked when determining admissibility of evidence is whether that evidence is relevant to the issues. "The test for relevancy generally is whether the evidence 'in some degree advances the inquiry, and thus has pro-

bative value.' " *State* v. *Blakeney,* 137 Vt. 495, 502, 408 A.2d 636, 641 (1979) (quoting C. McCormick, Evidence § 185, at 438 (2d ed. 1972)) ; see also *State* v. *Dragon,* 130 Vt. 334, 341, 292 A.2d 826, 831 (1972). Before admitting the evidence, however, the trial court must weigh its probative value against its improper prejudicial effect. *State* v. *Picknell,* 142 Vt. 215, 230, 454 A.2d 711, 718 (1982) (citing *State* v. *Bevins,* 140 Vt. 415, 419, 439 A.2d 271, 272 (1981)). "This weighing process is committed to the informed discretion of the trial judge." *State* v. *Blakeney, supra,* 137 Vt. at 503, 408 A.2d at 641.

There is no question that the pocketbook advanced the inquiry below, since it tended to prove flight on the part of the complaining witness. Defendant insists, however, that the claimed prejudice is not the pocketbook itself, but rather the human feces found inside. The complaining witness testified that she did not place the feces in the pocketbook, and the defendant insists that there is no proof that he did either. The trial court believed that such casual disregard for the woman's property, evidenced by the pocketbook stuffed with human feces, was indicative of the relationships between all parties involved. Moreover, such a contemptuous act was relevant to show the absence of consent. We are not persuaded that the relevance of the evidence of the pocketbook and its contents is overcome by the prejudice of its contents.

## III.

Finally, defendant asserts that the trial court incorrectly denied his motion in limine which sought to prevent the State from using the prior convictions of his former codefendants for purposes of impeachment. The other men had originally been named as codefendants in the alleged rapes. The trial court granted defendant's request that his trial be severed from that of the other two, and both men were subsequently tried and convicted prior to the commencement of this trial. Defendant desired to call these previously convicted men as witnesses in his defense.

At the hearing on the motion, the defendant argued that the facts of his case required the trial court to use its discretion as to whether the convictions should be admitted, rather than be bound by the rule of *State* v. *Manning,* 136 Vt. 436, 392

A.2d 409 (1978). Defendant now asserts that *State* v. *Manning* has been overruled by *State* v. *Gardner*, 139 Vt. 456, 433 A.2d 249 (1981), which held that "the cross-examination of a witness concerning prior convictions is subject to the discretion of the trial court." *Id.* at 458, 433 A.2d at 250. Specifically, we stated in *Gardner* that "[t]here may be circumstances which require the exclusion of impeachment by prior crimes . . . in a criminal case when the witness is not the defendant . . . ." *Id.* at 460, 433 A.2d at 251. Since we have recently held that *Gardner* is retroactive in cases such as this, see *State* v. *Shattuck*, 141 Vt. 523, 530, 450 A.2d 1122, 1125 (1982), we must reject the State's claim that *Gardner* should not be applied retroactively.

█  If the discussion were to stop here, we would have to reverse. However, the State further points out that the trial court never issued a final ruling denying defendant's motion. Therefore, the State contends that since the trial court deliberately left the issue open for further discussion, the rule of *Gardner* is inapplicable. We agree.

A review of the record discloses that at the hearing on the motion the following colloquy took place:

> The Court: There is one other thing I would like to talk about. That business you mentioned before about wanting to know whether the credibility of the other co-defendants could be impeached with their prior conviction. I have indicated to you already on the basis of the matter not being briefed at all, that I am not inclined to allow him—I am inclined rather to allow them to be impeached if you call them by those prior convictions. . . . I guess what I am saying is the door is still open. . . .

> The Court: I guess what I am saying is I haven't closed my mind to the issue.

A thorough search through the record fails to disclose any further mention of this motion by either the court or the parties. Thus, we must conclude that no ruling on the motion was ever made by the court.

■ It is the burden of the defendant to produce in this Court a record from which it affirmatively appears that error was committed in the court below. *State* v. *Kasper,* 137 Vt. 184, 199, 404 A.2d 85, 94 (1979) (citing *State* v. *Beckenbach,* 136 Vt. 557, 561, 397 A.2d 79, 81 (1978)). That burden has not been met here. The court indicated that it had not fully made up its mind on the motion. Instead, it was leaving the matter open for further discussion. The defendant, however, never brought the subject up again. The defense counsel is required to show some diligence in preserving an evidentiary point that is the subject of an ambiguous exchange before a claim of error involving that exchange will be made the basis of an order for a new trial. *Id.* at 199–200, 404 A.2d at 94. Because of the lack of diligence on the part of the defendant in pursuing this motion to a final ruling by the trial court, we hold that the defendant can claim no error.

*Judgment affirmed.*