### State of Vermont v. Merle Brian Kerr

[470 A.2d 670]

No. 196-81

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed November 1, 1983

*Philip H. White,* Orleans County State's Attorney, Newport, for Plaintiff-Appellee.

*Paul D. Jarvis* of *Blum Associates, Inc.,* Burlington, for Defendant-Appellant.

**Peck, J.** Defendant was convicted by a jury of two counts of knowing and unlawful possession of regulated drugs (8 ounces of hashish; 137.0 grams of cocaine) in violation of 18 V.S.A. § 4224(f)(1), and one count of carrying a deadly weapon (a .357 magnum handgun) while committing a felony, against the strictures of 13 V.S.A. § 4005. He instituted a timely appeal to this Court; we affirm the conviction.

Defendant presents four issues for our consideration. First, he alleges the trial court erred in denying his motions for a judgment of acquittal made at the close of the State's case and at the end of the trial. Second, he challenges the charge to the jury on the issues of defendant's alleged false statements relating to guilty knowledge of the drugs and of the weapon. Third, he claims the court erred in permitting the State to present evidence of the total value of the drugs seized, when the unlawful possession charges did not include all of them. Fourth, defendant contends the lower court erred in denying his motion to suppress evidence seized in the warrantless search of the bag containing the drugs and the gun.

At approximately 12:45 a.m. during the night of June 18, 1980, a United States Border Patrol Agent (agent) having

secondary duties as a customs officer, was on patrol, driving westerly along a secondary or back road, known as Holland Road, in the Town of Derby, about one-half mile east of the Interstate 91 port of entry from Canada. At the point where the incidents material to this case commenced, Holland Road passes through a heavily wooded area and runs parallel to the Canadian border. It is intersected by an overgrown road, generally impassable to motor vehicles, commonly known as the "Old Road." This road crosses the border about forty-five feet north of the intersection, connecting with a Canadian highway running parallel to the border and the Holland Road, some one hundred yards north of the latter.

At this point and time the agent noticed a man standing in the tree line on the edge of the Old Road approximately fifteen feet north of the Holland Road intersection, and thirty feet south of the international border. The agent continued driving west until he was out of sight of the intersection, then turned and drove back the way he had come, passing the intersection in an easterly direction. Again he observed the same person he had seen a few minutes earlier, but nearer to the Holland Road pavement. As the car approached, the person darted from sight in a northerly direction along the Old Road.

The agent continued easterly for about a mile, turned his car around, extinguished his lights, and again drove westerly on the Holland Road. As he came near the intersection once more he turned on his lights and saw the same person again, this time carrying a bag in his left hand. As the car approached, the person dropped the bag and walked toward the vehicle. The agent stopped; upon his request the man identified himself as Merle Kerr, the defendant, a United States citizen and a resident of the nearby Town of Morgan.

Satisfied as to identification and citizenship, the agent released the defendant, who walked away rapidly in an easterly direction on the Holland Road, making no effort to retrieve the bag he had dropped. The agent then walked to the bag, which proved to be a dark green opaque plastic garbage bag tied at the top. He ripped it open, and found inside a brown paper bag containing a .357 magnum handgun, the weapon which was the subject of the third count charged against

defendant, and another paper bag. Inside this bag were several envelopes and two smaller plastic bags, one of which contained what appeared to be hashish, and the other a white powdered substance.

With the discovery of this potential evidentiary material, the agent drove after defendant and found him some distance away trying to hitchhike a ride; he detained him and called the state police. The police took defendant to the Derby barracks and advised him of his *Miranda* rights, which he waived. He denied both knowledge and possession of the bag and its contents throughout all investigatory proceedings, but did not take the stand at trial.

Police investigation developed certain other probative evidence which was introduced at the suppression hearing and later during trial. This evidence included testimony that heel prints corresponding to the boots worn by defendant were discovered in the area where the agent first saw him, and that defendant's pants were wet from the knees down at the time of his arrest, consistent with the path of footprints later discovered in the wet high grass along the Old Road.

Additional testimony indicated that the various bags and envelopes seized contained 320.3 grams or 11.3 ounces of hashish, 137.05 grams or 4.84 ounces of cocaine, and other unregulated substances. The total value of all the regulated drugs seized was estimated by police at $20,000.00 to $35,-000.00. However, the values of the hashish and cocaine that were actually made the subject of the first two counts were $800.00 and $1,000.00 respectively.

There was testimony also that if, as defendant claimed, he had been merely hitchhiking to his home, there was a much more direct, better travelled, and more logical route for doing so than on the Holland Road, especially at that hour of the night.

I.

Defendant contends that the trial court erred in denying his motions for acquittal made at the close of the State's case, and again at the conclusion of the trial. He claims that the State failed to prove guilty knowledge of the contents of the garbage bag beyond a reasonable doubt. In other words, he argues that the State presented no evidence that he *knew* the

bag contained either the regulated drugs as charged in counts one and two, or the handgun which was the subject of the third count.

### A.

In viewing the issue of knowledge as it relates to the drugs contained in the plastic garbage bag, there is no question that the State is required to establish knowledge in order to sustain a conviction under 18 V.S.A. § 4224(f)(1)(B). Scienter on the part of a defendant is an essential element of the offense.

In the instant case, defendant argues there was insufficient evidence to justify a jury verdict against him on the issue. He contends that the jury must have engaged in speculation and conjecture in reaching its verdict on the element of knowledge, and this is not proper. *State* v. *Savo,* 139 Vt. 644, 646–47, 433 A.2d 292, 293 (1981). We acknowledge the principle as correct as far as it goes. However, we disagree with defendant as to its applicability to the circumstances of this case.

It is well established that the guilt of a defendant in a criminal case may be proved by circumstantial evidence alone, if that evidence is proper and sufficient in itself. *State* v. *Colby,* 140 Vt. 638, 641–42, 443 A.2d 456, 457 (1982). If the rule were otherwise most premeditated offenses, particularly the more serious and well-planned criminal adventures, would be impossible to prove. *Id.* The law is not so naive that it permits its violators to hide behind "speculation and conjecture" in the presence of sufficient facts and circumstances to justify an inference of guilt, or more particularly in this matter, of guilty knowledge.

The standard of proof is the same whether the evidence is direct or circumstantial: the facts necessary to establish the elements of a crime must be proved beyond a reasonable doubt. *State* v. *Joyce,* 139 Vt. 638, 639, 433 A.2d 271, 272 (1981). And this proof of facts includes reasonable inferences properly drawn therefrom. *State* v. *Olds,* 141 Vt. 21, 26, 443 A.2d 443, 445 (1981).

The question to be resolved in this matter on the ele-

ment of knowledge reduces to an inquiry into the sufficiency of the evidence to sustain the conviction. Addressing the question in the light of the evidence most favorable to the State as the prevailing party, and excluding modifying evidence, *State* v. *Eaton,* 134 Vt. 205, 206, 356 A.2d 504, 504 (1976), we hold that the evidence as disclosed by the record was enough to permit the jury to find the requisite criminal knowledge beyond a reasonable doubt. The lateness of the hour, defendant's proximity to the border and the remoteness of the location in which he was discovered, his furtive conduct throughout, his efforts to disassociate himself from the bag, the credibility of his own claims and explanations as given to the police, and substantial evidence indicating that he had in fact just crossed the border, all of these factors taken together constitute sufficient evidence of guilty knowledge to sustain the verdict.

Finally, we are not persuaded by defendant's argument that he might have been a mere courier with no knowledge of the specific contents of the bag. This claim can be made in any similar instance, and in some situations may have merit. In the instant case, however, the evidence was more than enough to go to the jury on the credibility of such a claim.

## B.

Turning to the issue of knowledge as it relates to the handgun, the Vermont statute controlling the offense of carrying a weapon while committing a felony, 13 V.S.A. § 4005, differs from the statute relating to the possession of regulated drugs. The drug possession statute, as noted above, requires that an accused "knowingly" possess the contraband. On the other hand, the weapon statute does not contain any language which *expressly* requires knowledge. The latter statute reads in part:

> A person who carries a dangerous or deadly weapon, openly or concealed, while committing a felony . . . shall be imprisoned not more than five years or fined not more than $500.00, or both.

Defendant recognizes this distinction, but argues that conscious or knowledgeable possession of a weapon represents

the true intent of the legislature. We acknowledge that decisions on the same issue from other jurisdictions are not uniform, nevertheless we disagree with the defendant and with those courts that appear to support his position. See *State* v. *Russo*, 113 R.I. 248, 253–54, 319 A.2d 655, 658 (1974), cited by defendant.

The meaning of § 4005 is plain on its face unless we read into it language that is not there. Moreover, we find no other statute in pari materia with it which alters that meaning or renders it ambiguous. It can, therefore, and must, be enforced as the legislature enacted it, according to its terms. *State* v. *Baldwin*, 140 Vt. 501, 509, 438 A.2d 1135, 1139 (1981). The element of scienter is simply not a part of the statute, and we will not read into it such a requirement. To do so would expand its plain meaning by implication. In construing a statute we will do this with the greatest caution; it will be enlarged by implication only when it is necessary to make it effective. *Saund* v. *Saund*, 100 Vt. 387, 393, 138 A. 867, 870 (1927). In the absence of such a need we will not intrude between the legislature and its will as expressed by the plain meaning of the language selected; to do otherwise would constitute judicial legislation which is not a proper function of the courts.

No such exercise in construction is necessary to render § 4005 effective and enforceable as it is written. It states the obvious to say that if the legislature had intended to require knowledge it could very easily have said so, as it has in other offenses such as the possession of regulated drugs. There are a sufficient number of statutory crimes in which scienter is *not* required for conviction, for example, the unlawful furnishing of alcoholic beverages under 7 V.S.A. § 658, so-called statutory rape, 13 V.S.A. § 3252(3), certain motor vehicle offenses, and others, that we cannot assume a mere inadvertent omission here, or find an unexpressed intent by implication.

Defendant's motions for acquittal were properly denied.

## II.

Defendant claims next that the trial court erred in its

charge to the jury on the issue of his alleged false statements relating to his guilty knowledge.

In that portion of the charge complained of, the trial court told the jury:

> If you find [defendant's] explanation [to the police] false or intended to mislead the police, you may, but you are not required, to consider that fact on the question of guilty knowledge.

and thereafter:

> If you find the defendant intended to mislead the officer, you may draw such inferences as to his knowledge of the contents of the bag as are reasonable to you.

Defendant argues that he was entitled to an additional charge that the inferences permitted by the instruction, standing alone, were insufficient to establish guilty knowledge beyond a reasonable doubt.

 The difficulty with defendant's position is at least threefold. Although he stated a general objection to the charge on the use of alleged false statements, he made no request for the specific cautionary charge he now insists should have been given. Accordingly, the failure to give such a charge was not preserved for purposes of appeal. *State* v. *Kasper*, 137 Vt. 184, 209, 404 A.2d 85, 99 (1979). Secondly, there was no objection made to the charge as given on the grounds suggested here, that it did not go far enough. V.R.Cr.P. 30. It is true, as defendant points out, that the trial court must give a full charge upon all the points of law involved whether requested or not, *State* v. *Shotten*, 142 Vt. 558, 561, 458 A.2d 1105, 1106 (1983) (specific charge requested, proper exception taken, reversal resulted); *State* v. *Quesnel*, 124 Vt. 491, 495, 207 A.2d 155, 157 (1965).

> [W]here it is claimed the court has failed to instruct on one or more essential points or issues, such failure must be brought to the court's attention before the jury retires so as to afford the court a fair opportunity to correct, add to, or modify the instructions given. This is the well established law of this state.

*Id.* This, as noted above, defendant did not do.

█ Finally, the charge as given was carefully worded as referring only to a *permissive* inference. In the absence of a specific request for an additional cautionary charge, or a timely objection pointing out the specific nature of the claimed shortcoming, we hold that the charge, taken as a whole, was adequate on the point without misleading the jury. *State* v. *Rathburn,* 140 Vt. 382, 387, 442 A.2d 452, 455 (1981).

## III.

Over defendant's strenuous objection, the trial court permitted the State to introduce evidence that the total value of all the drugs contained in the plastic garbage bag was between $20,000.00–$35,000.00. The actual charges against him contained in the first and second counts involved only a portion of the drugs seized, having a combined value of approximately $1,800.00. Defendant contends the admission of this evidence was error and substantially prejudiced his case. We disagree.

█ The evidence of total value was relevant to the key issues of knowledge and possible motive (the profitability of drug smuggling); contrary to defendant's assertion, we think its probative value was considerable. Since the case for the prosecution on the issue of knowledge was, of necessity, based in large measure on circumstantial evidence, the total value was obviously important evidence.

█ Regardless of the relevancy of evidence, however, and particularly in the face of an objection, the trial court must first determine admissibility by weighing its probative value against any possible and disproportionate prejudicial effect. *State* v. *Dubois,* 142 Vt. 391, 395, 457 A.2d 623, 625 (1983). Nevertheless, this balancing of interests is committed to the sound and informed discretion of the trial court. *Id.*

Defendant argues that this evidence was intended to link him with "a large drug ring and the source of drugs in the area . . . and thus lead the jury to a finding of guilt by association." He contends this was prejudicial and inappropriate in view of the small quantity of drugs involved in the charges

against him. He then refers us to testimony of a police witness to support this claim.

We have examined this testimony and conclude that defendant is stretching it to say more than it does. In fact it relates only to the qualifications of the witness, based on his experience, to place a value on the drugs. No mention is made of "smuggling rings," or to the extent of clandestine operations in the area.

The trial court heard extensive arguments on the probative-prejudicial issue before ruling. There is no clear showing of an abuse of discretion and we find none.

## IV.

Defendant's final assault charges the trial court with error in denying his motion to suppress evidence of the contents of the various bags and envelopes seized by the authorities. The plastic bag and its contents, he argues, were "seized and examined without a search warrant or other lawful justification."

Unfortunately for defendant he is perched squarely on the horns of an uncomfortable dilemma. On the one hand he has not alleged that the agent or any officer of the state police were trespassing on his property when the search was made, nor did he claim either a proprietary or possessory interest in the bag or its contents. On the contrary, he denied any such interests. That being so, we agree with the State's position that he had no standing to contest the search. Rights under the Fourth Amendment to the United States Constitution are personal; they may not be asserted vicariously. *Rakas* v. *Illinois*, 439 U.S. 128, 133–34 (1978).

On the other hand, assuming the defendant had a possessory interest of some kind at the time he was first discovered by the agent, the United States Supreme Court has held that there is nothing unlawful in a warrantless search and seizure of abandoned property. *Abel* v. *United States*, 362 U.S. 217, 241 (1960). Similarly, this Court held that "[o]ne who abandons or discards property cannot complain of the later seizure of such property by the police or of its

use against him in criminal proceedings." *State* v. *Barr,* 126 Vt. 112, 118, 223 A.2d 462, 467 (1966).

The test of rights under the Fourth Amendment is whether the search was reasonable. *Mapp* v. *Ohio,* 367 U.S. 643, 653 (1961). "There is no fixed formula for determining what is an unreasonable search. Each case must be resolved on its own facts." *State* v. *Barr, supra,* at 118, 223 A.2d at 467.

The time lapse in *Barr,* between the offense and the search of the abandoned motor vehicle, was of a considerably longer duration than the relatively short period disclosed by the record here. Nevertheless, we hold that the evidence of abandonment, showing that defendant dropped or discarded the bag in a public place where anyone might find and appropriate it, walked away from it, first towards the agent, then along the road towards his home, is sufficient in this case to justify the appropriation and warrantless search.

In search and seizure cases, abandonment relates, not necessarily to the property, per se, in the sense of the law of personal property, but to abandonment of the expectation of privacy which a suspect may have in the property. *City of St. Paul* v. *Vaughn,* 306 Minn. 337, 346, 237 N.W.2d 365, 370–71 (1975), cited by the State (holding that defendant had "abandoned" any reasonable expectation of privacy he may have had in a glasses case containing drug paraphernalia which he hid beneath the counter of a business establishment when being followed by police). In the instant case, it is clear that defendant had abandoned any reasonable expectation of privacy he might otherwise have been able to claim in the bag, regardless of who actually owned it.

We hold the search was reasonable under the circumstances presented here. There was no error in denying the motion to suppress.

*Affirmed.*