### State of Vermont v. Robert Chambers

[477 A.2d 110]

No. 143-81

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed March 2, 1984

Motion for Reargument Denied April 16, 1984

*John J. Easton, Jr.,* Attorney General, *Robert V. Simpson, Jr.,* Assistant Attorney General, and *Stephen Craddock,* Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Andrew B. Crane,* Defender General, *William A. Nelson,* Appellate Defender, and *Henry Hinton,* Montpelier, for Defendant-Appellant.

**Hill, J.** The defendant appeals his conviction for burying the dead body of his daughter without a burial permit, in violation of 18 V.S.A. § 5211. We affirm.

The defendant's daughter, Hanna, died during the course of her home birth at a house in Island Pond shared by the defendant and other members of his religious community, the Northeast Kingdom Community Church. Shortly after Hanna's death, a member of the church contacted the regional medical examiner and requested a death certificate for the child. After briefly examining the baby, the examiner was unable to determine the cause of death and therefore refused to sign a death certificate. 18 V.S.A. § 5205(c). Instead, the examiner informed the state's attorney and the chief medical examiner, 18 V.S.A. § 5205(a), who decided that an autopsy should be performed. 18 V.S.A. § 5205(f). The defendant refused to allow an autopsy, claiming that his religious beliefs forbade the performance of an autopsy on his child. As a result of this refusal, the defendant was unable to obtain a death certificate, which is a prerequisite for obtaining a burial permit. 18 V.S.A. § 5207. The defendant buried his daughter without the burial permit, in violation of 18 V.S.A. § 5211.

On appeal, the defendant makes four claims: (1) his conviction, resulting from his religiously based refusal to permit an autopsy, violated his right to the free exercise of his religion protected by the First Amendment of the United States Constitution and Chapter I, Article 3rd of the Vermont Constitution; (2) 18 V.S.A. § 5205(f), which allows the state's attorney or chief medical examiner to order autopsies, is unconstitutional because it does not contain adequate standards to guide these officials' discretion; (3) the State failed to prove beyond a reasonable doubt that the defendant's daughter was a "person" as that term is used in 18 V.S.A. § 5211; and (4) the State's questions to witnesses about the death of another child in the defendant's church, and the autopsy performed on that child, denied the defendant a fair trial.

I.

We first address the defendant's argument that his conviction violated his right to the free exercise of his religion. In *Wisconsin* v. *Yoder,* 406 U.S. 205 (1972), the United

States Supreme Court decided that a state may impinge upon the practice of a sincere religious belief only if the state's interest is of "sufficient magnitude to override the interest claiming protection under the Free Exercise Clause." *Id.* at 214. However, before determining the importance of the state's interest, the party claiming a violation of his or her free exercise rights must show that the conduct the state is interfering with is based on a legitimate religious belief and not on "purely secular considerations." *Id.* at 215. The Court pointed out that "the very concept of ordered liberty precludes allowing every person to make his [or her] own standards on matters of conduct in which society as a whole has important interests." *Id.* at 215–16. Conduct based on "subjective evaluation and rejection of the contemporary secular values accepted by the majority . . . [has a] philosophical and personal rather than religious [basis] . . . and . . . does not rise to the demands of the Religion Clauses." *Id.* at 216.

 The evidence in this case does not support the defendant's claim that his conduct "is not merely a matter of personal preference, but one of deep religious conviction, shared by an organized group . . . ." *Id.* The defendant has failed to show that his church believes in the practice of burying the dead without autopsies. The record shows that the tenets of the defendant's church do not prohibit the performance of autopsies. Rather, the defendant claims only that he was opposed to this particular autopsy. Thus, the defendant's decision not to allow an autopsy was an individual one, based on this particular situation and not on a fundamental belief of the members of his church. Therefore, we hold that the defendant's conduct is not protected by the free exercise clauses of either the United States or the Vermont Constitutions.

II.

The defendant next argues that 18 V.S.A. § 5205(f), which authorizes the state's attorney or chief medical examiner to decide when to order an autopsy, is unconstitutional because it gives those officials unbridled discretion to order autopsies. We disagree.

■ ■ This Court has held that discretion delegated by the legislature to administer a law must not be "unrestrained and arbitrary." *State* v. *Auclair*, 110 Vt. 147, 163, 4 A.2d 107, 114 (1939). A statute delegating to an agency or an official the duty to administer that statute is valid only if it " 'establish[es] a certain basic standard—a definite and certain policy and rule of action for the guidance of the [official authorized or] agency created to administer the law.' " *Id.* (quoting *State ex rel. State Board of Milk Control* v. *Newark Milk Co.*, 118 N.J. Eq. 504, 522, 179 A. 116, 125 (1935)).

■ 18 V.S.A. § 5205(f) states that "[t]he state's attorney or chief medical examiner, if either deem it necessary and in the interest of public health, welfare and safety, or in furtherance of the administration of the law, may order an autopsy to be performed . . . ." The defendant claims that the language of this subsection provides insufficient standards to control the exercise of official discretion in ordering autopsies. Subsection (f), however, is only one subsection of § 5205. We must examine the entire section, and not just the subsection in question, to determine whether sufficient standards exist. *State Conservation Department* v. *Seaman*, 396 Mich. 299, 308–09, 240 N.W.2d 206, 210 (1976). In reading 18 V.S.A. § 5205, it is clear that the legislature intended autopsies to be permitted only in those circumstances listed in 18 V.S.A. § 5205(a). Section 5205(a) provides:

> When a person dies from violence, or suddenly when in apparent good health or when unattended by a physician or a recognized practitioner of a well-established church, or by casualty, or by suicide or as a result of injury or when in jail or prison, or any mental institution, or in any unusual, unnatural or suspicious manner, or in circumstances involving a hazard to public health, welfare or safety, . . . the medical examiner [shall be notified] . . . and immediately upon being notified, such medical examiner shall notify the state's attorney . . . [who] shall thereafter be in charge of the body and shall issue such instructions covering the care or removal of the body . . . .

When read in conjunction with § 5205(a), § 5205(f) con-

tains sufficient standards to control the officials' exercise of discretion in ordering autopsies. As such, § 5205(f) does not exceed constitutional limits.

 The defendant contends that if § 5205(f) is construed to permit autopsies only in those situations listed in § 5205(a), an autopsy never should have been ordered in this case because Hanna's birth was attended by a midwife who was a "recognized practitioner" of the defendant's church. We reject this contention. Even assuming the midwife was a "recognized practitioner of a well-established church" within the meaning of § 5205(a), Hanna's death could have involved a number of other situations listed in § 5205(a), for which the attendance of a practitioner of a well-established church is irrelevant. For instance, § 5205(a) lists death caused by violence or casualty, or death "in any unusual, unnatural or suspicious manner," as circumstances requiring the attention of the medical examiner and state's attorney (who may then decide, under § 5205(f), to order an autopsy). Thus, in ordering an autopsy in this case, the state's attorney and chief medical examiner did not abuse the discretion delegated to them by § 5205(f).

### III.

The defendant argues that his conviction should be reversed because the State failed to prove beyond a reasonable doubt that his daughter was a "person" as that word is used in 18 V.S.A. § 5211. We reject this argument.

The defendant was convicted of violating 18 V.S.A. § 5211, which states, in pertinent part:

> A person who buries, entombs, transports or removes the dead body of a person without a burial-transit or removal permit so to do . . . shall be imprisoned not more than five years or fined not more than $1,000.00.

The defendant points out that § 5211 is part of subchapter 1 of chapter 107, Title 18. Chapter 107 deals with deaths, burials and autopsies. Subchapter 1 refers to deceased "persons," whereas subchapter 2 deals with "fetal deaths." "Fetal death" is defined in 18 V.S.A. § 5221 as "death prior to the complete expulsion or extraction from the mother of a prod-

uct of conception . . . ." *Id.* Since subchapter 2 applies to requirements surrounding "fetal deaths," and subchapter 1 refers to deceased "persons," the defendant says that subchapter 1 applies to requirements for "nonfetal" deaths, or deaths that occur after the "complete expulsion or extraction from the mother of a product of conception . . . ." 18 V.S.A. § 5221. Therefore, the defendant claims, before one may be convicted of violating 18 V.S.A. § 5211, the State must show that the buried dead body was a "person" and not a "fetal death."

The defendant's argument is without merit. Subchapters 1 and 2 of chapter 107 differentiate between dead "persons" and "fetal deaths." However, § 5224(b) of subchapter 2, which deals with disposition of fetal remains and required permits, specifically states that "sections 5209–5216 of this title [shall] be applicable to fetal remains as are applicable to dead bodies." Thus, for purposes of 18 V.S.A. § 5211, it is irrelevant whether the buried body was a dead "person" or a "fetal death," and the State did not have to prove beyond a reasonable doubt that the defendant's daughter was a "person."

### IV.

The defendant's final argument is that the State's questions to witnesses concerning the death of another child in the defendant's religious community denied him a fair trial. We disagree.

Upon questioning by the State, two witnesses, the midwife who attended the defendant's daughter's birth and one of the church's elders, revealed that the church elders had agreed an autopsy should be performed on another child in the church community who had died recently. The defendant claims that this testimony was both hearsay and irrelevant. However, the defendant did not make any objections to the midwife's testimony at trial; therefore, he is precluded from raising these issues on appeal unless the error is so serious it strikes at the heart of his constitutional rights. *State* v. *Towne,* 142 Vt. 241, 245, 453 A.2d 1133, 1134 (1982) ; *State* v. *Billado,* 141 Vt. 175, 182, 446 A.2d 778, 782 (1982). We find

no glaring error, so we do not reach the defendant's claims regarding the midwife's testimony.

■■■ The defendant also did not object at trial to the church elder's testimony on the ground that it was hearsay; the issue is raised for the first time before this Court. Since the trial court was not given an opportunity to rule on the hearsay question, we will not consider it here. *State* v. *Carlson*, 133 Vt. 562, 564, 349 A.2d 237, 239 (1975).

At trial the defendant did object to the church elder's testimony on the ground that it was irrelevant. The trial judge overruled the objection, stating that the church community's decision-making process in determining the appropriateness of autopsies had been raised by the defendant in his religious defense. Therefore, the testimony was relevant, and admissible.

■■■■ The test for determining the relevancy of evidence is whether it " 'advances the inquiry, and thus has probative value.' " *State* v. *Blakeney*, 137 Vt. 495, 502, 408 A.2d 636, 641 (1979) (quoting C. McCormick, Evidence § 185, at 438 (2d ed. 1972)). If evidence has probative value, it is admissible if this value is not outweighed by any improper prejudicial effect. *State* v. *Dubois*, 142 Vt. 391, 395, 457 A.2d 623, 625 (1983). The trial judge must exercise "informed discretion" in conducting this balancing test. *Id.* (citing *State* v. *Blakeney, supra,* 137 Vt. at 503, 408 A.2d at 641). We find that the trial court did not abuse its discretion in ruling that the probative value of the church elder's testimony outweighed its possible prejudicial effect. Therefore, we reject the defendant's claim.

*Affirmed.*