NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 51

No. 2015-233

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Robert Witham | October Term, 2015 |

Michael S. Kupersmith (motion to dismiss); James R. Crucitti, J. (final judgment)

William H. Sorrell, Attorney General, and David Tartter, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

James M. LaMonda of Law Office of James M. LaMonda, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **SKOGLUND, J.** This appeal raises a narrow, but novel, issue: whether offenders previously convicted of home improvement fraud can be found guilty under the same statute if they subsequently perform home improvement activities but claim lack of knowledge of the statutory obligation to notify the Attorney General and file a surety. Defendant argued that the statute's notice and surety section necessarily includes a scienter element. The State asserted that the section should be read without a fault element. The trial court held that the notice and surety section delineates a strict liability offense. We affirm.

¶ 2. On October 12, 2005, defendant pled guilty to one count of home improvement fraud in violation of 13 V.S.A. § 2029(b)(1). The plea agreement imposed a four to twelve

month sentence, all suspended but for ten days on the work crew, and required defendant to perform restitution, to pay a fine, and to be on probation. Apparently, defendant was aware that he was to be placed on the home improvement fraud registry as a result of his conviction. Defendant satisfactorily completed the sentence imposed and had no contact with law enforcement until the circumstances underlying this appeal.

¶ 3. In 2014, a report was made to the Colchester Police Department that defendant was performing home improvement work without the proper notice to the Attorney General and without filing the necessary surety bond or letter of credit. At that time, defendant sought legal advice and claims that only then did he learn that he was obligated, pursuant to 13 V.S.A. § 2029(f)(2), to notify the Attorney General and post a bond or letter of security. The police conducted an investigation and concluded that the improper home improvement activities occurred at three separate locations during October 2012, June 2013, and July 2013. In November 2014, the State charged defendant with three counts of violating the notice and surety requirements of § 2029(f)(2).

¶ 4. Under § 2029(f)(2),[1] a person previously convicted of home improvement fraud "may engage in home improvement activities for compensation" only if:

> [T]he person notifies the Office of the Attorney General of the intent to engage in home improvement activities, and . . . the person has filed a surety bond or an irrevocable letter of credit with the Office in an amount of not less than $50,000.00, and pays on a regular basis all fees associated with maintaining such bond or letter of credit.

Id. Further, § 2029(e)(5) provides that a person who violates § 2029(f)(2) "shall be imprisoned for not more than two years or fined not more than $1,000.00, or both." Id. § 2029(e)(5).

---

[1] In 2015, the Legislature deleted § 2029(c) and redesignated subsections (d) through (g) as (c) through (f). 2015, No. 13, § 1. Defendant was charged with violating § 2029(f) prior to the statute's redesignation; as a result, this opinion uses the pre-amendment citations.

¶ 5. Defendant moved to dismiss the counts pursuant to Vermont Rule of Criminal Procedure 12(d) because the charging information did not allege that he knew about the requirements of § 2029(f)(2). The State opposed the motion, asserting that § 2029(f)(2) should be read without a fault element. On April 24, 2015, the trial court issued a written order denying defendant's motion and holding that § 2029(f), in combination with § 2029(e)(5), does not contain a scienter element.

¶ 6. To reach its conclusion, the trial court focused on the five factors this Court described in State v. Roy, 151 Vt. 17, 25, 557 A.2d 884, 889 (1989), partially overruled on other grounds by State v. Brillon, 2008 VT 35, 183 Vt. 475, 955 A.2d 1108. The trial court noted that the first factor—the severity of the punishment—favored strict liability because violating § 2029(f) is a misdemeanor without a significant incarceration period. Similarly, the second factor—the potential harm to the public—supported a finding of no mens rea because the statute protects the public from contractors previously determined to be untrustworthy. The trial court next found that contractors as a group should be expected to know the statutory and regulatory requirements that govern their trade; therefore, the third factor—knowledge of the relevant information—suggested that § 2029(f) did not contain a scienter element. The fourth factor— the difficulty of prosecution if proof of intent is required—likewise reinforced the trial court's determination because proving defendant's subjective knowledge of the law would be virtually impossible. Finally, the trial court found that the last factor—the number of prosecutions expected—weighed slightly in favor of strict liability because prosecutions under § 2029(f) are rare. Because the factors taken together weighed strongly in favor of strict liability, the trial court held that a scienter element should not be implied in the statute.

¶ 7. After the trial court's written decision issued, defendant entered a conditional plea to two of the charges, reserving the right to appeal the question of whether the statute contains a scienter element. This appeal followed.

¶ 8.     It is undisputed that defendant did not properly notify the Attorney General or file a surety bond or an irrevocable letter of credit.  The only question on appeal is whether the statute required defendant to know about the notification and surety requirements imposed by § 2029(f)(2).  We affirm and hold that § 2029(f) is a strict liability offense.

¶ 9.     Our review of a statute to determine whether an element of intent should be implied is a question of law, which we review de novo.  State v. Pontbriand, 2005 VT 20, ¶ 12, 178 Vt. 120, 878 A.2d 227.

¶ 10.     It should be noted that this Court does not assume that a statute without a mens rea requirement necessarily creates a strict liability offense.  State v. Francis, 151 Vt. 296, 307, 561 A.2d 392, 398 (1989); see also Morissette v. United States, 342 U.S. 246, 263 (1952) ("[M]ere omission from [the statute] of any mention of intent will not be construed as eliminating that element from the crimes denounced.").  As a general rule, we interpret criminal statutes in the defendant's favor, but we "must avoid interpretations which defeat the purpose of the statute."  Roy, 151 Vt. at 25, 557 A.2d at 889.  Thus, in some cases we have discerned a mens rea element without an express writing in the statute.  See, e.g., State v. Audette, 149 Vt. 218, 222, 543 A.2d 1315, 1317 (1988) (determining kidnapping contains mens rea element), partially overruled on other grounds by State v. Bourn, 2012 VT 71, 192 Vt. 270, 58 A.3d 236.  But in other circumstances we have determined that statutes contain strict liability offenses without an element of fault.  See, e.g., Roy, 151 Vt. at 27, 557 A.2d at 891 (finding attempt to elude police officer is strict liability offense).

¶ 11.     To determine if a statute contains a scienter element, we first examine the plain language of the statute for keys to the Legislature's intent.  See, e.g., State v. Richland, 2015 VT 126, ¶ 7, 21, __ Vt. __, 132 A.3d 702 (finding mens rea in statute's plain language and holding mens rea applies to successive elements in statute). We construe the language with the assumption that "[w]here the Legislature includes particular language in one section of a statute

4

but omits it in another section of the same act, it is generally presumed that the Legislature did so advisedly." State v. Fontaine, 2014 VT 64, ¶ 10, 196 Vt. 579, 99 A.3d 1034 (citation omitted). Here, a subsection of the same statute—§ 2029(b)(1)—defines the mens rea of home improvement fraud as "knowingly." Id. Given the inclusion of "knowingly" in § 2029(b)(1), it not only appears that the Legislature intended for § 2029(f) to be a strict liability offense, but also that the Legislature had ample opportunity to insert a scienter element if it so chose.

¶ 12. Next, we look to the common law because our assumption is that the Legislature enacted the statute with an understanding of historical legal concepts. State v. Stanislaw, 153 Vt. 517, 522, 573 A.2d 286, 289 (1990). If a crime originates in the common law, the presumption is that intent remains a necessary part of the offense, absent an express contradiction from the Legislature. Id. at 522-23, 573 A.2d at 290. In this case, however, the law prohibiting home improvement fraud is entirely a creature of statute. See 2003, No. 51, § 1. As a result, no common law presumption in favor of imputing a scienter element exists.

¶ 13. Without this common law presumption, our precedent next directs us to examine the factors set forth in Roy. See, e.g., State v. Searles, 159 Vt. 525, 527-29, 621 A.2d 1281, 1283 (1993) (applying Roy factors to sexual assault of person under sixteen). In Roy, the defendant was convicted of attempting to elude a police officer. On appeal, he argued that a scienter element should be implied in the statute and that "[h]e must have known that he was being signaled to stop by an enforcement officer." Roy, 151 Vt. at 25, 557 A.2d at 889. We rejected this argument. Id. at 27, 557 A.2d at 891. To come to our conclusion, we examined the statutory language and five additional factors: "The severity of the punishment; the seriousness of the harm to the public; the defendant's opportunity to ascertain the true facts; the difficulty of prosecution if intent is required; and the number of prosecutions expected." Id. at 25, 557 A.2d at 889-90; see also 1 W. LaFave & A. Scott, Substantive Criminal Law § 5.5(a), at 383–86 (2d

5

ed. 2003). We found that the five factors did not "undercut the conclusion drawn from the statutory language." Roy, 151 Vt. at 26, 557 A.2d at 890.

¶ 14. In this case, the five factors outlined in Roy support the conclusion that the Legislature intended for § 2029(f) to be a strict liability crime. Of the five factors, the most important is the first—the severity of the punishment. Stanislaw, 153 Vt. at 523, 573 A.2d at 290. In Roy, we noted that attempting to elude a police officer was a misdemeanor, which supported the conclusion that the statute had no fault element. Roy, 151 Vt. at 26, 557 A.2d at 890. Here, because the maximum term of imprisonment is two or less years, a violation of § 2029(f) is a misdemeanor. See § 2029(e)(5) (stating maximum penalty is two or less years of imprisonment); 13 V.S.A. § 1 (defining "felony" as any offense "whose maximum term of imprisonment is more than two years"). Although misdemeanor offenses are not per se strict liability offenses, it is generally true that lighter punishments suggest that the Legislature intended the crime to be a strict liability offense. See Audette, 149 Vt. at 222, 543 A.2d at 1317; 1 LaFave, supra, § 5.5(a), at 383-84.

¶ 15. We are not persuaded by defendant's argument that the cumulative effect of each violation of § 2029(e)(5) could result in severe punishment. First, we do not measure the severity of the punishment based on multiple violations of the same statute; rather, the factor focuses on the punishment the Legislature imposed for a single violation of § 2029(f). Second, we have previously held that a crime with a maximum term of twenty years was a strict liability offense. Searles, 159 Vt. at 528-29, 621 A.2d at 1283. In this case, even if defendant was sentenced to serve consecutive terms for his three violations of § 2029(f), it would result in a total of six years of incarceration. Given the comparatively light sentence imposed by § 2029(e)(5), the first factor strongly supports the conclusion that § 2029(f) is a strict liability offense.

6

¶ 16. Likewise, Roy's second factor suggests § 2029(f) does not contain a fault element. The second factor focuses on protecting the public from serious harm based on the assumption that, if the potential harm to the public is highly likely or particularly grave, it is more probable that the Legislature intended the statute to lack a scienter element. Searles, 159 Vt. at 528, 621 A.2d at 1283. While looking at the seriousness of the harm, we must take great care to "to avoid interpreting statutes as eliminating mens rea where doing so criminalizes a broad range of . . . innocent conduct." In re Welfare C.R.M., 611 N.W.2d 802, 809, 810 (Minn. 2000) (holding possession of dangerous weapons on school yard is not strict liability crime because knives are common items). Section 2029(f) does not criminalize a broad range of activity. Rather, it imposes an obligation on a narrow group of people previously convicted of home improvement fraud and ensures that such offenders complete any home improvement activities they undertake. This prophylactic purpose supports strict liability.

¶ 17. Roy's third factor—defendant's opportunity to establish the true facts—does not weigh significantly in favor of strict liability. In Roy, the statute required that "the officer wear the appropriate insignia and the law enforcement vehicle sound a siren and have a flashing signal lamp"—elements that made it extremely easy for a person to ascertain that the police were signaling him or her to stop. Roy, 151 Vt. at 26, 557 A.2d at 890; cf. 1 LaFave, supra, § 5.5(a), at 385 ("The harder to find out the truth, the more likely the legislature meant to require fault in not knowing."). Here, defendant is a contractor who should have some knowledge of the rules and regulations governing his trade. Indeed, some courts have noted that, if a statute is aimed at a specific industry, members of that industry may be expected to be aware of the relevant statutes. See, e.g., Rivera v. State, 363 S.W.3d 660, 670 (Tex. App. 2011) (finding factor weighed in favor of strict liability because ordinance directed at entertainers, not ordinary citizens). Moreover, defendant knew that he would be placed on a home improvement fraud registry, a fact that could have alerted him to the possibility of other collateral consequences. On

the other hand, as defendant argues, § 2029(f) is a collateral consequence imposed by the criminal code, not the type of municipal code or regulation that generally governs home improvement contractors.  See, e.g., 24 V.S.A. § 3101(a) (establishing authority for cities, towns, and villages to establish codes and regulations governing construction).  More important, unlike the statute in Roy, § 2029(f) does not contain facts that would make a violation of the statute obvious, which tempers the argument that the statute is a strict liability offense.

¶ 18.   But Roy's fourth factor offers considerable support that § 2029(f) does not contain a scienter element—that is, if § 2029(f) required a fault element, it would be nearly impossible to prosecute.  Indeed, absent an admission from the defendant, it is difficult to see what evidence could establish a defendant's subjective knowledge of the surety requirement. See Roy, 151 Vt. at 26, 557 A.2d at 890 ("[I]ntent would be hard to prove in the individual case because of the subjective nature of the element.").  Defendant argues that prosecutors must prove a scienter element to implement the legislative scheme, but we fail to see how this argument affects the efficacy of prosecutions.  Because we assume that the Legislature intended for § 2029(f) to be effectively enforced, the fourth factor strongly suggests that we should not impute a fault element into § 2029.

¶ 19.   Finally, the fifth factor cuts against strict liability.  The principle underlying this factor is that the "fewer the expected prosecutions, the more likely the legislature meant to require the prosecuting officials to go into the issue of fault."  1 LaFave, supra, § 5.5(a), at 386. Although our case law does not delve into this factor in great detail, we agree with defendant that prosecutions under § 2029 are rare and prosecutions under § 2029(f) are even more rare.

¶ 20.   Ultimately, although Roy's third and fifth factors tend to weigh against strict liability, the other three factors predominately favor a conclusion that the Legislature intended for § 2029(f) to lack a fault element.  Moreover, the absence of a common law presumption against strict liability and the statutory language—particularly the Legislature's inclusion of

"knowingly" in § 2029(b)(1)—support this conclusion. We hold that § 2029(f) is a strict liability offense.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 21. **ROBINSON, J., concurring.** Because this case does not fall within any exception to the general rule that ignorance of the law is no excuse, I concur in the majority's affirmance of defendant's conviction. I write separately because my path to that conclusion diverges from the majority's.

¶ 22. The parties to this case, and the majority, focus on a line of cases addressing the question of whether the defendant must have knowledge with respect to every element of a particular charged crime, or whether the crime can be characterized as a "strict liability offense" defined by the defendant's actions without regard to intent or knowledge as to every element. A separate body of law addresses the question of whether and when ignorance of a law is a defense to its enforcement. Defendant's defense in this case clearly falls within the latter category— relying on ignorance of the law as a defense. For that reason, in this case, we should apply authority relating to ignorance-of-the-law defenses—not the framework applied by the majority in this case.

¶ 23. This court has developed a multi-part test for determining what intent or knowledge a defendant must have with respect to the elements of a charged crime. See State v. Roy, 151 Vt. 17, 25, 557 A.2d 884, 889 (1989), partially overruled on other grounds by State v. Brillon, 2008 VT 35, 183 Vt. 475. In Roy, the defendant was convicted of, among other things, failing to stop his motor vehicle "when signaled to do so by an enforcement officer operating a

9

law enforcement vehicle sounding a siren and displaying a flashing blue lamp." 151 Vt. at 19 n.1, 557 A.2d at 886 n.1. He argued that an implied element of the crime was that he knew that he was being signaled to stop by a law enforcement officer displaying a flashing light and sounding a siren. Id. at 25, 557 A.2d at 889. In determining whether the applicable statute, 23 V.S.A. § 1133, required that the defendant have knowledge that he was being signaled to stop by a law enforcement officer, this Court considered first and foremost the text of the statute itself, as well as the severity of the potential punishment, the seriousness of the harm to the public, the defendant's opportunity to ascertain the true facts—in that case the fact that the officer's blue lights were flashing—the difficulty of prosecution if intent is required, and the number of prosecutions expected. Roy, 151 Vt. at 25, 557 A.2d at 889-90. Applying these factors, this Court concluded that the Legislature intended the statute to penalize a failure to stop when signaled by an officer operating blue lights without the need for the State to prove that the individual knew the blue lights were flashing. Id. at 26-27, 557 A.2d at 890-91.

¶ 24. The line of cases cited in Roy all considered whether the State had to prove that the defendant had intent or knowledge with respect to a particular fact that constituted an element of a charged crime. See, e.g., State v. Peters, 141 Vt. 341, 347, 450 A.2d 332, 335 (1982) (concluding that enhanced penalties for assaulting officer in performance of official duty applies when defendant knows or has good reason to believe that person is in fact officer); State v. Kerr, 143 Vt. 597, 604-05, 470 A.2d 670, 673-74 (1983) (concluding that statute prohibiting carrying dangerous or deadly weapon while committing felony does not require proof that defendant has knowingly carried deadly weapon).

¶ 25. Likewise, our subsequent cases considering or applying the Roy framework all involve the question of whether the defendant was required to have knowledge of each factual element of a particular crime. See, e.g., State v. Richland, 2015 VT 126, ¶ 19, ___ Vt. ___, 132 A.3d 702 (declining to consider factors because language of statute clearly required that

10

defendant know that person he was enabling to access alcohol was underage); In re Appeal of Tinker, 165 Vt. 621, 622, 686 A.2d 946, 947-48 (1996) (mem.) (applying factors in considering whether elements of abuse of elderly or disabled adult include knowledge of victim's status as elderly or disabled adult); State v. Searles, 159 Vt. 525, 526-29, 621 A.2d 1281, 1282-83 (1993) (applying Roy factors in considering whether statutory rape is "strict liability" crime or whether, instead, State must prove that defendant knew person with whom he engaged in sexual act was under age of sixteen).

¶ 26.    None of the cases in this line of authority involve an asserted defense that the defendant did not know the requirements of the law.  They all involve the question of knowledge as to one or more factual elements of a particular crime, and the analytical framework this Court developed in Roy and its progeny is tailored to that context.

¶ 27.    A related but separate body of law addresses the question of whether and when a defendant's ignorance as to the requirements of the law may constitute a defense.  This Court has repeatedly affirmed that ignorance of the law is generally no excuse to its enforcement.  See, e.g., State v. Woods, 107 Vt. 354, 356-57, 179 A. 1, 2 (1935) (holding that where defense is based upon mistake of law rather than of fact, presumption "that every one is conclusively presumed to know the law [is] of unquestioned application in Vermont as elsewhere, both in civil and criminal cases").

¶ 28.    Modern courts and commentators have brought more nuances to the broader claim that ignorance of the law provides no excuse, recognizing a number of circumstances in which a defendant's knowledge of the law, or lack thereof, may be relevant to a criminal defendant's liability.  As commentator Wayne LaFave has explained, the broad proposition that ignorance of the law is no excuse is not precisely correct, and is subject to "numerous exceptions and qualifications."  1 W. LaFave & A. Scott, Substantive Criminal Law § 5.6(a), at 394 (1986).

¶ 29.    Of most significance to this case, ignorance that the law proscribes particular conduct <u>may</u> be a defense if knowledge of the law is an element of the offense in question.  <u>Id</u>. § 5.6(a) ("[I]gnorance or mistake of fact or law is a defense when it negatives the existence of a mental state essential to the crime charged."); see also Model Penal Code 2.04(1) (2015) ("Ignorance or mistake as to a matter of fact or law is a defense if: (a) the ignorance or mistake negatives the purpose, knowledge, belief, recklessness or negligence required to establish a material element of the offense or (b) the law provides that the state of mind established by such ignorance or mistake constitutes a defense.").

¶ 30.    In <u>Bryan v. United States</u>, 524 U.S. 184 (1998), the U.S. Supreme Court considered the question of when knowledge that conduct is illegal is itself an element of the crime to be proven by the State.  The defendant in that case was convicted of "willfully" dealing in firearms without a federal license.  He knew that his conduct was unlawful, but the district court considered whether the term "willfully" in the operative statute required proof that the defendant knew of the particular federal licensing requirement at issue.  <u>Id</u>. at 186.  The Court explained that as a general matter, when used in the criminal context, a "willful" act is one taken "with knowledge that [the] conduct [is] unlawful.  <u>Id</u>. at 192 (quotation omitted).  The Court explained that the defendant's general knowledge that his conduct was unlawful satisfied the "willfulness" requirement, and the State did not need to prove that the defendant was specifically aware of the federal licensing requirement.  <u>Id</u>. at 191-96.

¶ 31.    The Court contrasted a "willfulness" requirement with a requirement in related statutes that acts be committed "knowingly," explaining that "the term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law" and that "the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law."  <u>Id</u>. at 192 (quotation omitted).  The Court concluded,

12

> [U]nless the text of the statute dictates a different result, the term " knowingly" merely requires proof of knowledge of the facts that constitute the offense.
>
> <u>With respect to the three categories of conduct that are made punishable by [the federal statute] if performed "knowingly," the background presumption that every citizen knows the law makes it unnecessary to adduce specific evidence to prove that "an evil-meaning mind" directed the "evil-doing hand</u>." More is required, however, with respect to the conduct in the fourth category that is only criminal when done "willfully." The jury must find that the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful.

Id. at 193 (footnotes omitted) (emphasis added).

¶ 32. The U.S. Supreme Court distinguished two cases in which it held that "willful" violation of particular statutes in the tax code required knowledge of the specific provisions of the tax code at issue. Id. at 193-96. The Court explained that those cases " 'carv[e] out an exception to the traditional rule' that ignorance of the law is no excuse" because they involved highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct. Id. at 194-95 (quotation omitted).

¶ 33. The Court's analysis in Bryan reinforces that (1) the general rule is that "the background presumption that every citizen knows the law makes it unnecessary to adduce specific evidence" that a defendant knows that his or her conduct is unlawful; (2) the bar for excepting a statute from this general requirement is high, apparently limited to statutes proscribing "willful" violations of the law; and (3) even when the State does have to prove defendant's knowledge that the conduct in question was unlawful, it usually does not have to prove that defendant knew the specific provision in the law at issue.[2] See also McFadden v.

---

[2] Modern courts and commentators have recognized several other exceptions to the general rule that "ignorance of the law is no excuse," none of which appear to apply here. For example, where a defendant has a mistaken impression concerning the legal effect of some collateral matter that results in misunderstanding the legal significance of defendant's conduct, this claim may be subject to a very different analysis from the claim that the defendant did not know the conduct in question was proscribed. See 1 W. LaFave, supra § 5.6(a), (d), at 394, 405.

U.S., __ U.S. __, 135 S. Ct. 2298, 2304 (2015) (holding that defendant who knowingly distributes heroin but does not know that heroin is listed on schedules would be guilty of knowingly distributing controlled substance because ignorance of law is typically no defense to criminal prosecution).

¶ 34.    In this case, defendant's defense is that he did not know that his conduct violated his legal obligations; he does not plead ignorance as to any factual element of the charge against him.  For that reason, the body of law dealing with mistakes or ignorance of the law is squarely on point.

¶ 35.    In light of the above discussion, this is not a close case.  The statute at issue requires a person who is convicted of home improvement fraud to notify the Attorney General of the conviction.  13 V.S.A. § 2029(d)(1).[3]  It allows the person to engage in home improvement activities for compensation only upon notice to the employer and the Attorney General if the work is for a company engaged in home improvement activities, or, otherwise, only upon filing a surety bond or irrevocable letter of credit with the Attorney General.  Id. § 2029(f).  And it provides that a person who violates either of these requirements "shall be imprisoned for not more than two years or fined not more than $1,000.00 or both."  Id. § 2029(e).  It contains no "willfulness" requirement or other language that would remove the general presumption that a defendant's ignorance that conduct is proscribed by the law is not a defense to a violation of that law.

---

A defendant's ignorance of the law may also constitute a valid defense where a defendant believes the conduct is not proscribed because the enactment in question has not been made reasonably available to the public or defendant has reasonably relied upon a statute, judicial decision, or administrative order.  Id. § 5.6(e); see also Model Penal Code § 2.04(3) (identifying essentially same exceptions to general rule that ignorance of law is no excuse).

[3]    Consistent with the majority, I reference the pre-2015 amendment citations to these statutes.

¶ 36. Although I concur fully in the result of the majority's analysis, I write separately because I believe that the <u>Roy</u> framework applied by the majority is ill-suited to this genre of cases, and that the majority's implicit holding that ignorance-of-the-law defenses are subject to the multi-factorial analysis in <u>Roy</u> could open the door to unwarranted claims and unnecessary litigation. I realize that the majority responded to the issues on appeal using the framework presented by both parties. But in embracing that framework without considering whether it is most appropriate to this case, the majority may inadvertently push the evolving law in directions that don't make sense.

¶ 37. I am authorized to state that Justice Dooley joins this concurrence.

_____

Associate Justice

15